George J. SCHONHOLTZ, Plaintiff,

v.

**AMERICAN STOCK EXCHANGE INC. et al., Defendants.**

**No. 73 Civ. 3689.**

United States District Court,
S. D. New York.

May 6, 1974.

---

Silverman & Harnes, New York City, for plaintiff.

Lord, Day & Lord, New York City, for defendant American Stock Exchange, Inc.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Bear, Stearns & Co.

## MEMORANDUM

LASKER, District Judge.

In August, 1971, plaintiff sold short 200 shares of Levitz Corporation stock on the American Stock Exchange (Amex) and subsequently covered the sale at a substantial loss. He brings this action against Amex, the firm of Ramsay, Re, Farrell, Kachlin & Erdman (specialists in Levitz stock) (Ramsay) and Bear, Stearns & Co. (Bear, Stearns) Ramsay's parent. In substance the complaint alleges that at the time of the events in question the common stock of Levitz traded on the Amex at "artificially high prices created by a limited and inadequate supply of Levitz common stock" (Paragraph 6); that this was known or should have been known by defendants; and that plaintiff (and the class of short sellers of Levitz he seeks to represent) were damaged "when they covered their short positions . . . by purchasing stock at an artificially high price created by the inadequacy of the floating supply." (Paragraph 7.) Plaintiff claims that defendants should "not have allowed" Levitz to trade at such artificially inflated prices and should have promptly suspended trading in the stock.

Jurisdiction is predicated upon §§ 6, 10(b), 20 and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78f, 78j(b), 78t and 78aa, Rules 170 and 177 of the American Stock Exchange Rules and the Amex Constitution. Defendants move pursuant to Rule 12(b), Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim.

## I.

The motion to dismiss the § 10(b) claims against all defendants is granted. Plaintiff charges that defendant Amex failed to supervise Ramsay in the discharge of Ramsay's obligation as a specialist, pursuant to Amex Rules, to "maintain a fair and orderly market," and that Amex, Ramsay, and Bear, Stearns (as controlling person of Ramsay) were under a duty to disclose that the market in Levitz stock was not in fact fair and orderly.

■■ However, even taking these allegations as true, they do not state a § 10(b) claim. Both Rule 9(b), Federal Rules of Civil Procedure, and decisions of this Circuit require that the circumstances constituting a § 10(b) claim be stated with particularity and that merely conclusory allegations of fraud are insufficient to state a § 10(b) claim. The present complaint fails those requirements. Plaintiff's claim boils down to the assertion that defendants *impliedly* represented to the public that there was an adequate floating supply of Levitz stock; that plaintiff relied on this representation; that the floating supply was actually "inadequate" (Paragraph 8); that price movements in the stock were accentuated as a consequence; and that defendants were under a duty to disclose these facts and halt trading in the stock (Paragraph 8).

■ There exists no legal duty or rule of the Amex requiring disclosure of the fact that only 1.3 million shares of Levitz were available for public trading or indicating that such a lot is *per se* inadequate to assure an orderly market as contemplated by Rule 170. Exhibit D annexed to the Reply Memorandum of Amex sets forth the delisting policies of the Amex. The relevant section provides for delisting of a security where "(a) if the number of shares publicly held (exclusive of holdings of officers, directors, controlling shareholders or other family or concentrated holdings) is less than 150,000." Plaintiff's own allegations establish that the Amex complied with this policy. Rule 170 of the Amex, relating to the functions of specialists, (see Exhibit A, Amex Reply Memorandum) sets forth the general obligation of specialists "to engage in a course of dealings for his own account to assist in the maintenance, *insofar as reasonably practicable,* of a fair and orderly market." (emphasis added.) Other provisions of the rule detail the kinds of transactions the specialist is either obligated to enter where practicable, in the performance of his duty, (such as dealing "for his own account in full lots when lack of price continuity or lack of depth in the full lot market exists . . .") or prohibited from entering (such as a purchase at a price above the last sale in the same trading session). Rule 177 provides that a specialist shall report to a floor official of the Amex any unusual activity or price change in a security, or material information regarding the issue or the market in it. The complaint alleges no violations of any of these specific duties. Even assuming the trading in Levitz stock was hectic or even dangerous, plaintiff points to no recognized legal duty on the part of any of defendants to disclose that fact, or any action or omission by defendants which amounted even to negligence, much less securities law fraud. See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2d Cir. 1971), Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972). We conclude plaintiff has failed to state a § 10(b) claim against any of the defendants.

## II.

■ Plaintiff's claims arising out of the alleged violations of exchange rules are also dismissed as to all defendants. Even assuming that Amex rules were violated (although, as noted above, the complaint does not detail how), the few courts presented with the issue have held that violations of exchange rules are not *per se* actionable by private parties. In Colonial Realty Corp. v. Bache

& Co., 358 F.2d 178, 182 (2d Cir. 1966), Judge Friendly noted that violation of *some* exchange rules *might* provide the basis for a private cause of action "with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC Regulation." In declining to imply a private cause of action for violation of § 6 of the NYSE constitution providing for disciplinary action against members guilty "of conduct or proceeding inconsistent with just and equitable principles of trade," Judge Friendly noted the phrase was "something of a catch-all . . . including merely unethical behavior which Congress could well not have intended to give rise to a legal claim," 358 F.2d at 182 and warned that "mere recitation of the statutory watchword by an aggrieved investor would saddle the federal courts with garden-variety customer-broker suits . . ." (358 F.2d at 183).

Judge Friendly's admonition has been taken seriously by other courts presented with the same issue: no case of which we are aware has found an implied right of action for the violation *per se* of an exchange rule; allegations of such violation have been held to state a claim only where coupled with sufficient allegations of fraud on the investor. Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, 410 F.2d 135 (7th Cir. 1969), cert. denied 396 U.S. 838, 90 S. Ct. 98, 24 L.Ed.2d 88 (1969) (N.Y.S.E. Rule 405, the "know your customer rule," actionable in conjunction with allegations of fraud), Aetna Casualty & Surety Co. v. Paine, Webber, Jackson & Curtis, '69–'70 Transfer Binder, CCH Fed. Sec.L.Rep. ¶ 92,748 (N.D.Ill.1970) (alleged violation of Rule 405 amounting to mere negligence failed to state a claim) *accord,* McMaster Hutchinson & Co. v. Rothschild & Co., 1972–73 Transfer Binder, CCH Fed.Sec.L.Rep. ¶ 93,541 (N.D.Ill.1972); Bush v. Bruns Nordeman & Co., 1972–73 Transfer Binder, CCH Fed.Sec.L.Rep. ¶ 93,674 (S.D.N. Y.1972) (alleged violations of Rule 405

"inextricably linked" with § 10(b) claims stated a claim). These cases guide us here. Since we have found that plaintiff has failed to state a §10(b) claim, his allegations regarding violation of Amex rules, taken alone, do not state a claim.

The motions to dismiss are granted.

It is so ordered.