George J. SCHONHOLTZ, Plaintiff-Appellant,

v.

AMERICAN STOCK EXCHANGE INC. et al., Defendants-Respondents.

No. 238, Docket 74-1795.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1974.

Decided Nov. 25, 1974.

Sidney B. Silverman, New York City (Silverman & Harnes, New York City, on the brief), for plaintiff-appellant.

John J. Loflin, New York City (R. Scott Greathead and Lord, Day & Lord, New York City, on the brief), for defendant-respondent American Stock Exchange.

Elizabeth M. Taylor, New York City (John B. Daniels, Robert P. Mitchell, and Winthrop, Stimson, Putnam & Roberts, New York City, on the brief), for defendants-respondents Ramsey, Re, Farrell, Rochlin & Erdman and Bear, Stearns & Co.

Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

PER CURIAM:

Schonholtz brought suit against the American Stock Exchange (ASE) and the firm of Ramsey, Re, Farrell, Rochlin and Erdman [Ramsey], the specialist in Levitz stock [1] on behalf of the class of individuals who purchased Levitz Furniture Corporation common stock on the ASE between October 20, 1969 and August 24, 1971 to cover short sales. He claimed that insiders and institutions

1. Bear, Stearns & Co., Ramsey's parent, was also joined as a defendant because of the claim it was a "controlling person" under § 20 of the Securities Exchange Act, and the complaint was dismissed as to it as well.

owned so large a portion of the 5,573,895 Levitz shares outstanding that the "float"—or public ownership—was "only" 1.3. million shares. This, he asserted, was inadequate in light of existing demand, and gave rise to liability based on ASE Rules 170 and 177, § 6 of the Securities Exchange Act, and rule 10b–5. Judge Lasker dismissed the action under Fed.R.Civ.P. 12(b)(6), and we affirm.

■ The gist of Schonholtz's complaint is that Ramsey and ASE failed in their obligation to insure a market in which float would be adequate, yet the complaint fails to disclose a source for such an obligation. Rule 170 of ASE, on which he relies most heavily, limits the affirmative duty of the specialist to "assist in the maintenance, insofar as reasonably practicable, of a fair and orderly market" to a requirement that he

> engage, to a reasonable degree under the existing circumstances, in dealings for his own account . . . when lack of price continuity or lack of depth in the full lot market or temporary disparity between supply and demand . . . exists or is reasonably to be anticipated.

ASE Rule 170(d). It is thus apparent that the rule is concerned with temporary dislocations in trading, rather than a condition of inadequate float which might persist, as Schonholtz alleged, for two years.

Indeed, the very definition of "fair and orderly" which Schonholtz cites in his brief (P. 24), demonstrates the error of his reliance on the rule:

> "Fair" and "honest" presumably encompass the notion of freedom from manipulative and deceptive practices of all kinds and may be regarded as positive expressions of the act's ban on such practices, acts, and devices. "Orderly" presumably implies efficiency and economy of operations, but also embraces concepts of regularity and reliability of operation—"a market which does not 'fold up' when the pressure on dealers becomes too heavy" and the concept of avoidance of wide price swings within relatively short spans of time.

Securities and Exchange Commission, Report of Special Study of Securities Markets, H.R. Doc. No. 95, 88th Cong., 1st Sess., pt. 2, ch. V, 14, 15 (1963).

Even the most charitable reading of Schonholtz's allegation that Levitz stock traded at artificially high prices falls short of a charge that the market had "folded up" or otherwise failed to comply with the elements of the above definition. Thus, even if a private right of action otherwise exists for violation of Rule 170, a matter which we need not decide, see Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), no valid claim is asserted here.

■ Schonholtz's reliance on ASE Rule 177 is equally misplaced. It is farfetched to assume that the specialist's duty under Rule 177(a) to report "unusual activity or price change" imposes upon him the obligation to report an inadequate float that allegedly persisted for two years, a matter which is hardly "activity," surely not a "price change," and certainly not "unusual." And it is obvious that the market conditions alleged by Schonholtz are by no means conventionally thought of as "material information," the subject of Rule 177(b).

■ Given that the facts alleged show no violation of ASE rules, the claims based on § 6 and rule 10b–5 fail as well. Schonholtz maintains that under § 6, the ASE has the duty to enforce its rules and the securities laws, and is liable to a private party if that duty is violated. Without pausing to discuss the merits of this assertion, see Baird v. Franklin, 141 F.2d 238 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), we note that no valid claim based on a failure to enforce rules can exist when no rules were violated. Similarly, the 10b–5 claim is based on an alleged implied representation by ASE and Ram-

sey that the float in Levitz stock was adequate. But the complaint does not suggest any possible source for such an implied representation other than the ASE rules and § 6, nor do we perceive any. Thus, at most ASE and Ramsey represented that all relevant statutes and ASE rules were complied with; and it is apparent from what we have already said that none of Schonholtz's allegations establishes that this representation was false.

Affirmed.