discriminatory against these former employees.

9. George Kassabaum, one of the principals of the defendant firm, has been president of the American Institute of Architects and has been very active in his efforts to recruit blacks in the profession of architecture and design. The defendant firm has paid additional expenses, trained, and taught blacks in an effort to advance that race in the field of architecture and design.

10. Gyo Obata, a Japanese American, is another principal in the firm, and is very sensitive to racial prejudice because during World War II he was placed in a detention camp because of his Japanese descent.

11. The Court finds no credible evidence in the record to establish any evidence of discrimination as a pattern and practice of defendant firm. There is no evidence to show that the plaintiff has been discriminated against in either the tasks assigned to her or in her failure to receive promotions. As a matter of fact, to the contrary, this Court finds that defendant has been charitable with an employee who is most difficult to work with. Plaintiff has failed to meet her burden of proof.

### Conclusions of Law

1. This Court has jurisdiction by virtue of the Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e et seq.

2. There is no credible evidence in this record to sustain plaintiff's charge of discrimination. The cause will be dismissed with prejudice.

---

**Bettine Goodall CARROLL, Plaintiff,**

v.

**BEAR, STEARNS & CO., and Robert Gleason, Defendants.**

No. 75 Civ. 6130.

United States District Court, S. D. New York.

June 30, 1976.

Philips & Mushkin, New York City, for plaintiff; by Martin Mushkin, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Bear, Stearns & Co.; by Stephen A. Weiner, Robert J. Sussman, New York City, of counsel.

MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Hard on the heels of the landmark decision in *Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, we are called upon to apply its reasoning to a garden-variety customer-broker suit. Because the complaint—although purporting to state claims of fraud under section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 (hereinafter "10b–5"), the NASD and NYSE Rules and the common law—does nothing more than allege mere negligence, it must be dismissed for failure to state a claim under the above provisions. Plaintiff's proposed second amended complaint—although somewhat more detailed—likewise does not allege facts amounting to the requisite *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. *Id.*, at 1381; *Shemtob v. Shearson, Hammill & Co.* (2d Cir. 1971) 448 F.2d 442, 445.

What the complaint does allege is that in late August, 1969, plaintiff transferred the management of her $900,000, largely blue-chip, securities portfolio to the defendant Bear, Stearns & Co. and one of its registered representatives, the defendant Robert Gleason; that most of the securities in said portfolio were sold in a declining market by defendants within 90 days thereafter; that with the proceeds of such sales, defendant purchased nine allegedly speculative securities, most of which were resold in less than six months, generating $9,000 in broker's commissions and $3,000 of investment advisory fees, and subjecting plaintiff to substantial capital gains taxes. Plaintiff alleges that she was unfamiliar with the purchased securities prior to the recommendation of the defendants and entered into the above transactions in reliance upon their advice. The crux of her complaint is the contention that the sale of her portfolio and the subsequent purchases were made by defendants "without a proper evaluation of her portfolio" (¶ 16) and without conducting "diligent and reasonable research, which would adequately substantiate their solicitation and recommendation" (¶ 17). In strictly conclusory terms, the complaint then alleges that the foregoing constitutes "[a] device, scheme, or artifice to defraud" in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j; and Rule 10b–5, 17 C.F.R. 240. 10b–5 promulgated thereunder (¶'s 18–20); as well as Art. III, Section 2 of the Rules of Fair Practice of the NASD, Rule 405 of the NYSE and the common law.

■ Stripped of its conclusory allegations of fraud, the complaint alleges no more than that the defendants negligently managed plaintiff's portfolio in connection with advising her on investment decisions. Under the law in this Circuit—and certainly after the *Ernst* decision—such allegations, in the absence of an allegation of facts amounting to *scienter*, intent to defraud or intentional misconduct, are insufficient to state a claim under R. 10b–5. *Shemtob v. Shearson, Hammill & Co., supra.* In *Ernst,* the Court decisively laid to rest any contrary rule in holding that a private damage action is not sustainable under 10b–5 "in the absence of any allegation of 'scienter'— intent to deceive, manipulate, or defraud". 96 S.Ct. at 1381. Defining 'scienter' as "a mental state embracing intent to deceive, manipulate, or defraud" (*Id.,* n. 12), the Court repeatedly stressed that § 10(b) was intended solely to proscribe "knowing or intentional misconduct". *Id.,* at 1383. In footnote 12, however, it did leave open the question of whether "in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5". Even were we to assume *arguendo,* that recklessness is a sufficient predicate for 10b–5 liability, under no stretch of the imagination would the plaintiff's allegations of failure to properly evaluate and diligently research her portfolio and investment objectives amount to recklessness. At most, this might constitute negligent mismanagement of her account. But, as a cause of action sounding in negligence, it is not cognizable under 10b–5.[1]

■ Nor does the purported 10b–5 claim in the proposed second amended complaint meet the threshold requirements outlined above. The facts alleged are identical to those alleged in the first amended complaint, with a few inconsequential additions, which are set forth below:

(1) Paragraphs 13 and 13A refer to the written contractual agreements between the parties pursuant to which plaintiff opened her discretionary account with defendant Bear, Stearns & Co.

(2) Paragraph 14 alleges that the defendants knew or should have known certain facts relating to the source and history of plaintiff's portfolio and to her investment objectives.

467 F.2d 602, 606–8; *Shemtob v. Shearson, Hammill & Co., supra*; *Matheson v. White Weld & Co.* (S.D.N.Y.1971) 53 F.R.D. 450.

---

1. A corollary defect in the complaint is its failure to state with particularity the circumstances constituting the alleged fraud, as required by F.R.C.P. 9(b). *Segal v. Gordon* (2d Cir. 1972)

(3) Paragraph 15 alleges that defendants represented to plaintiff that they would examine her portfolio and research suitable securities for her.

(4) Paragraphs 21 through 24 go into great detail as to the nature of the securities which defendants purchased for plaintiff.

(5) Paragraphs 29 and 30 allege in conclusory fashion that the transactions engaged in by defendants were of no benefit to plaintiff and constituted churning.

Items (1)–(4) above add nothing further to the basic cause of action nor do they alter the negligence nature of that cause of action. There is nothing in them establishing that the defendants acted with a subjective intent to deceive, manipulate or defraud, or that their alleged errors in selection of investments constituted intentional misconduct or even recklessness. Moreover, with respect to Item (5), a conclusory allegation of churning—without a factual support—cannot save this complaint. At most, the allegations in plaintiff's complaint demonstrate that defendants turned over the bulk of her account once in a 15 month period by selling 22 of 24 holdings and reinvesting the proceeds in nine other securities, earning as commissions a total of $9,000—or a sum equal to 1% of the portfolio value. This hardly constitutes illegal churning cognizable under 10b–5, as defined by the courts and commentators. *Fey v. Walston & Co., Inc.* (4th Cir. 1974) 493 F.2d 1036 (account turned over 13 times in 26 months); *Hecht v. Harris, Upham & Co.* (9th Cir. 1970) 430 F.2d 1202 (10,000 trades with a gross dollar volume of $100 million consummated for an account worth $533,000, the broker realizing $189,000 in commissions); *Moscarelli v. Stamm* (S.D.N.Y.1968) 288 F.Supp. 453

(account turned over 12 times each month for 4 months; one particular security was purchased 15 times and sold 12); Note, "Churning by Securities Dealers", 80 Harv. L.Rev. 869 (1967). As the court noted in *Moscarelli, supra* (at 457):

". . . over-trading will constitute churning whenever a broker or dealer . . . abuses the confidence of the customer for personal gain by frequent and numerous transactions disproportionate to the investment in the account."

Churning has also been defined as occurring when a broker—acting in his own interests and against those of his customer—induces transactions in his customer's account "which are excessive in size and frequency in light of the character of the account". Note, *supra*, at 869. Certainly the single turn-over of plaintiff's account over a 15 month period and the earning of brokerage commissions equal to 1% of the value of the account cannot be termed excessive or be classified as churning, as above defined. See *Marcus v. Putnam* (D.Mass.1973) 60 F.R.D. 441, 446.

Plaintiff's other causes of action founder on the same infirmity. In Count II of her proposed pleading, plaintiff purports to state a claim—not raised in the original complaint—based on Section 206 of the Investment Advisers Act, 15 U.S.C. § 80b–6. The wording of this provision,[2] making it unlawful "to employ any device, scheme or artifice to defraud", is identical to the language employed in R. 10b–5. Consequently, the same pleading requirements with respect to particularity and *scienter* apply—which requirements we have already found not to have been met. See *Abrahamson v. Fleschner* (S.D.N.Y.1975) 392 F.Supp. 740, 750.

\*   \*   \*   \*   \*   \*

**2.** "It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud any client or prospective client;

(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative."

With respect to the claim asserted under the provisions of Art. III Section 2 of the Rules of Fair Practice of the N.A.S.D. (regarding suitability) and Rule 405 of the New York Stock Exchange ("know your customer" rule), it is well settled that a federal private right of action based on an alleged violation of said rules will be implied only when there are well-pleaded allegations of fraudulent conduct on the part of the defendant and not where the action is nothing more than a "garden-variety customer-broker suit", as here. *Colonial Realty Corp. v. Bache & Co.* (2d Cir. 1966) 358 F.2d 178, 183, *cert. den.*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56; *Schonholtz v. American Stock Exchange Inc.* (S.D.N.Y.) 376 F.Supp. 1089, 1092, *aff'd per curiam*, 505 F.2d 699 (2d Cir. 1974). Such allegations being here wanting, the claims must be dismissed.

The remaining claims (in the original complaint) or counts (in the proposed pleading) are common law breach of contract and negligence claims which cannot be maintained, in light of our dismissal of the federal claims, in the absence of diversity jurisdiction. Plaintiff is a citizen of New Jersey. The defendant Bear, Stearns is a limited partnership, of which many of the partners (both general and limited) are also citizens of New Jersey. Under these circumstances, complete diversity is lacking[3] and the remaining counts (or claims) are dismissed for lack of subject matter jurisdiction.

In conclusion, therefore, both complaints—the gravamen of which is a claim that defendants, in their capacity as investment advisors, exercised poor business judgment in fulfilling their contractual obligations to plaintiff—fail to state a claim for fraud or deceit under any of the provisions relied upon by plaintiff. Plaintiff's remedy, if any, lies in an action in state court for common law breach of contract and/or negligence.

3. "For purposes of diversity, a partnership is a citizen of each state of which a general part-

Defendant Bear, Stearns' motion is granted and the complaint is dismissed as to all defendants. Plaintiff's cross-motion for leave to file the proposed second amended complaint is denied. Submit judgment.

SO ORDERED.

ners is a citizen". *Lewis v. Odell* (2d Cir. 1974) 503 F.2d 445, 446.