Leo ZUCKER, on his own behalf and on behalf of other members of the class similarly situated, Plaintiff,

v.

Bernard SABLE et al., Defendants.

No. 74 Civ. 1086 (HFW).

United States District Court,
S. D. New York.

June 21, 1976.

On Motion for Reargument and Leave to Amend Oct. 9, 1976.

Cahn & Levinson, New York City, for plaintiff; by Herman Cahn, New York City, of counsel.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for defendants; by Franklin B. Velie, Theodore Altman, New York City, of counsel.

## OPINION

WERKER, District Judge.

Plaintiff suing for himself and on behalf of others similarly situated seeks to recover damages for alleged misstatements and omissions by the defendants in a press release that dealt with the development of soft contact lenses. This court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934. The defendants have moved to dismiss the amended complaint and for judgment on the pleadings.

The defendants assert that the complaint should be dismissed as insufficient as a matter of law for plaintiff's failure to allege a purchase or sale of securities by the defendant. There has been no showing that the defendants did in fact buy or sell securities. However, section 10b, 15 U.S.C. § 78j(b), is violated where assertions are made in a manner reasonably calculated to influence the investing community if such assertions are false or misleading or are so incomplete as to mislead irrespective of whether the issuance of the release was motivated by corporate officials for ulterior purposes. The term "in connection with" in rule 10b–5 should be construed broadly to include a device that would cause an investor to purchase or sell a corporation's securities. *Securities & Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) (*en banc*), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), *on remand*, 312 F.Supp. 77 (S.D.N.Y.1970), *modified*, 446 F.2d 1301 (2d Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

There is no requirement of contemporaneous trading in securities by insiders or by

the corporation itself. *Heit v. Weitzen,* 402 F.2d 909 (2d Cir. 1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). Since there are allegations that the plaintiff relied on the statements and in reliance did buy shares of Union stock, the purchase/sale requirement has been met.

The dispute in this action centers on the issuance by the defendants of a press release announcing the filing of an investigational new drug application with the Food and Drug Administration (FDA). Union, the corporate defendant was involved in the development of a water absorbing, plastic material for use in manufacturing soft contact lenses. The plaintiff alleges that it may take as long as several years from the time an investigational new drug application is filed until the product is approved for sale in the public market. The claim upon which this action is based is that the defendants were obligated to include this information in their press release and that the failure to do so resulted in the omission of material information in violation of rule 10b–5. The plaintiff also charges that the defendants failed to correct reports of the press release in various financial journals which omitted the word "investigational" in reporting the announcement by the company. Finally the plaintiff alleges "other actions" by the defendants that were calculated to create a false impression that the defendants were currently involved in the manufacture of soft contact lenses when in fact any entry into that market was several years away.

■ The plaintiff seeks recovery for the defendants' failure to include in the press release information concerning the FDA's procedures and processing time for investigational new drug applications. The defendants assert that rule 10b–5 does not impose any obligation to disclose public information which was equally available to the plaintiffs and the defendants. The plaintiff argues that the subject matter of the release is highly technical and is beyond the reach of the ordinary investor.

This appears to be a case of first impression on this issue. The cases cited to the court are not directly on point. For example, in *Hafner v. Forest Laboratories, Inc.,* 345 F.2d 167 (2d Cir. 1965), a case cited by the defendants, the court held that failure to disclose the market price of certain shares of stock was not a violation of section 10b. In that case, the plaintiff had an agreement with the defendant corporation that the corporation would, upon plaintiff's request, either seek to register the shares which the plaintiff held or would purchase back the shares for $1.75 per share. In connection with the exercise of the option, the plaintiff asked the corporation what was the current market price of the shares which were being traded in the over-the-counter market. The defendant failed to provide the information, but the plaintiff went ahead and sold the shares to the corporation. In a suit for rescission and damages, the plaintiff alleged a section 10b violation by the corporation in failing to disclose the material information, the market price of the shares, which the plaintiff had sought. The court dismissed the complaint and found that where the corporation did not misrepresent the market price and where that information was readily available in the pink sheets, there was no 10b violation.

Another case relied on by the defendants is *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275 (2d Cir. 1975). In that case, mutual funds purchased from Frigitemp a $1,000,000 convertible subordinated debenture and warrants to purchase common stock without disclosing to the corporation or its principal shareholders that the funds already owned a substantial amount of Frigitemp's publicly owned common stock and that they intended to purchase most of the public float. As a condition of the private placement, the funds had required the principal shareholders to contribute 100,000 shares of their common stock to the capital of the corporation. The court held that there was no obligation to inform the corporation that the companies purchasing the convertible debentures were also shareholders. Furthermore, the court held that there was no duty to disclose

information to which the corporation had access. The court also held that a "party charged with failing to disclose market information must be under a duty to disclose it to the plaintiffs." *Id.* at 282.

The defendants also rely on *Myzel v. Fields*, 386 F.2d 718 (8th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). But the portion of the opinion on which the defendants rely deals with the sale of stock by an insider to another insider. In that context the court held that a 10b–5 action could not be based on the failure to disclose certain inside information which was presumably equally known or available to both parties.

*Johnson v. Wiggs*, 443 F.2d 803 (5th Cir. 1971), another case cited by the defendants, is not sufficiently on point to provide support for the defendants' position. In that case, the plaintiff, held 59,000 shares of the company's stock and was its second largest shareholder. There was no significant market for the shares and the plaintiff and his financial adviser had been unsuccessful in finding a buyer for the shares. The defendant, the company's president and largest shareholder, had offered to buy the shares several times but the plaintiff had failed to respond. Shortly thereafter the company acquired a controlling interest in another company, a fact which was highly publicized and notice of which was sent to all the shareholders. Nonetheless, the plaintiff continued in his desire to sell his shares and made an offer to the defendant which he accepted. The plaintiff then sued for damages on the ground that the defendant had purchased plaintiff's shares without disclosing certain insider information which made the shares worth more than the plaintiff received. In dismissing the action, the court held that the development of a market in the stock, the current market price, and the corporate acquisition were all facts within the public domain and were not exclusively inside information. Furthermore, the plaintiff was the second largest shareholder and he, along with his financial adviser, had kept abreast of company affairs; thus the defendant was entitled to assume

that the plaintiff was aware of this public information and was under no obligation to disclose these facts.

As the preceding discussion indicates, each of these cases includes an element not present in the case at bar. In some the plaintiff and the defendant were both insiders between whom there was no duty of disclosure; in others, the information was readily available and in the public domain. However, the plaintiff, while refuting the authority presented by the defendants has failed to provide authority for granting the relief sought in this case.

There are two cases which are helpful in resolving this motion although neither is directly on point. In the first, *Kaplan v. Vornado, Inc.*, 341 F.Supp. 212 (N.D.Ill. 1971), the plaintiff purchased convertible debentures which were redeemable at the company's option. Failure to convert the debentures at the time of the call terminated the holders' right to convert them. The plaintiff bought the debentures on the advice of a broker who told him they were a good investment. The plaintiff did not know anything about debentures, did not investigate them or the company and did not inquire about the terms "redeemable" or "callable" the meanings of which he did not know. The plaintiff had only a vague understanding of the term convertible. The court held that an investor cannot reasonably rest upon his lack of knowledge and denied recovery where the plaintiff failed to read the debenture or to seek information about its important terms from a knowledgeable source.

The second is *Stedman v. Storer*, 308 F.Supp. 881 (S.D.N.Y.1969). In that case a press release was issued regarding a proposed merger. It did include the fact that CAB approval was needed and that it might be a lengthy process, but it omitted certain other information that would have been required at the time proxy material was prepared for obtaining shareholder approval. The press release failed to disclose that the directors who negotiated the merger had not consulted the independent outside director in advance and that the negotiators

did not own stock in the corporation they represented. However, the court found no 10b–5 violation. It held that the securities laws do not require that a press release include all the information which must at a later point be included in proxy material. Courts have generally applied a less stringent standard for press releases than for proxy statements and registration statements. "What is a Misleading Statement or Omission Under Rule 10b–5?," 42 *Fordham Law Review* 243 (1973).

This court adopts the reasoning of these opinions and concludes that the defendants have not violated rule 10b–5 by issuing the press release of April 26, 1971. The press release issued by the defendants included the word "investigational." The only complaint the plaintiff has is the failure to include an explanation of the term. The plaintiff admits that he was ignorant of the meaning of the term and that he did not know about the time lag between such a filing and the actual availability of the lenses in the public market. As the court held in *Kaplan v. Vornado, Inc., supra,* this court concludes that the plaintiff here cannot rely on his ignorance of the meaning of the term and then impose liability on the defendants when the impact of the event was not as beneficial as he might have hoped.

█ Furthermore, it is the court's conclusion that any estimate if given would have been at best approximate and more likely than not incorrect. As a consequence, the defendants would have been subject to an action such as this because they had misstated the facts. Under these circumstances, where the means of determining a fact are as available to the public as they are to the company and where the public can make the evaluation as to how beneficial a certain corporate action will be to the earning picture of that corporation, the omission of information about the decision making process of a government agency is not a violation of rule 10b–5. Public corporations regularly make announcements of their activities. It is the public investor and his adviser not the corporation itself who must make the final evaluation of the importance of that action and anticipate the effect it will have on the corporation's business. That is not the responsibility of the officers and directors of the corporation particularly when making the kind of estimate the plaintiff seeks to require is as likely as not to impose liability on those officers and directors for misrepresentation. Thus, with respect to the allegations of misrepresentation in the April 21, 1971 press release, the court finds that the plaintiff has failed to state a claim upon which relief can be granted and grants to the defendants judgment on the pleadings.

The plaintiff also seeks to impose liability for failure to correct the reports of the original press release which appeared in various financial journals. The defendants did include the word "investigative" in their press release. However, when the news was reported, certain journals apparently omitted the word.

The defendants assert that they have no obligation to correct errors in financial publications. In *Mills v. Sarjem Corp.,* 133 F.Supp. 753 (D.N.J.1955), the plaintiff sued for damages and rescission because the defendant failed to correct a newspaper article which reported incorrectly the contents of a letter which had already been sent by Sarjem to plaintiff, among others. The court held that there was no showing that the defendants knew of the article or that the plaintiff relied on it and that any reliance would be unjustified where the letter about which the report was made was in plaintiff's possession. The plaintiff in this case asserts that he read and relied on the original press release. He was thus aware of its contents and could not reasonably have relied on the error in the publication. In the court's opinion the defendants had no obligation under the securities laws to correct the error. Nevertheless they did correct it when it was brought to their attention and they did so without undue delay. The court is satisfied that the omission was the error of the publishers and was unrelated to the defendants and cannot be attributed to them.

■ The court concludes that where the error in a journal is not attributable to the defendants themselves, it is unreasonable to require the defendants to search out and correct errors in publications. *See Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969). To require the defendants to examine every financial publication to ascertain whether the reports of its admittedly accurate press release have misinterpreted the information so as to mislead members of the public would place them under an insurmountable burden not required by the law.

By reason of the above, the court concludes that the actions of the defendants and their issuance of the press release cannot be deemed market manipulation within the meaning of the securities laws and specifically finds that as a matter of law the plaintiff has failed to allege a violation of rule 10b–5. Consequently, defendants' motion is granted and the amended complaint is dismissed.

Submit Order.

## ON MOTION FOR REARGUMENT AND LEAVE TO AMEND

■ The plaintiff has now moved for reargument and leave to file a second amended complaint. Under Rule 9(m) of the General Rules for the Southern District of New York, a notice of the motion to reargue and a memorandum setting forth the matters or controlling decisions which counsel believes the court overlooked must be served within ten days after the determination of the court was filed. Although the defendants contend that the motion was untimely having been served more than ten days after the filing of the opinion, I have nevertheless considered the plaintiff's arguments.[1]

1. My earlier opinion is not a final determination of the court. Indeed, it specifically directed that an order be submitted. *See* 6A J. Moore, Federal Practice para. 58.02 (2d ed. 1974).

2. It must be germane to questions which were presented to the court but not fully considered

Plaintiff contends that the court misinterpreted the allegations contained in the amended complaint in a manner which affected the decision. After referring to both the original press release and the subsequent announcements of the discovery by financial periodicals as "publications," the amended complaint stated that the plaintiff made his purchases in reliance upon "said publications and information." Plaintiff now maintains that this phrase referred to an erroneous report published on the Dow Jones "broad tape" and not to the original press release distributed by the defendants.

■ Assuming *arguendo* that the reference is to the broad tape, plaintiff must demonstrate that this raises an issue of some consequence.[2] Because the court previously concluded that it would be unreasonable to require the defendants to correct errors not of their making, the plaintiff is unable to sustain that burden. The only legal authority cited in support of the motion to reargue, *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969), was considered by the court in arriving at its conclusion that there was no duty to correct present here. This must have been evident to counsel for the plaintiff since it was cited in the text of my opinion.

Plaintiff also contends that the court erred in its finding that the defendants corrected the error "without undue delay." The complaint stated that the defendants failed "to take steps to correct" the error "during the period complained of herein." Elsewhere in the complaint, that period was clearly identified as the eight days from April 26, 1971 to May 4, 1971. The plaintiff has not drawn the attention of the court to facts previously overlooked; I therefore stand by my earlier decision that the defendants made a prompt correction of the

in my earlier opinion. *Wilcox v. Richmond, Fredericksburg & Potomac Railroad Co.*, 270 F.Supp. 454, 459 (S.D.N.Y.1967); *Hernandez v. Koninklijke Nederlandsche Stoomboot Maatschappij N.V.*, 259 F.Supp. 658, 659 (S.D.N.Y. 1965).

error even though this was not their legal obligation.

 The amended complaint also contained a boiler-plate clause which alleged that the defendants took other action

"calculated to give the impression to members of the public that defendant UNION and its subsidiaries were then engaged in the business of producing plastic contact lenses, which actions of defendants misled members of the public into thinking that the plastic contact lenses referred to were the water-absorbing plastic contact lenses . . ."

The plaintiff maintains that this paragraph of the complaint was disregarded in my decision and that it states a cause of action. I have concluded, however, that this allegation is not sufficient to state a cause of action under Rule 10b–5. The complaint states that the plaintiff and others made their purchases in reliance upon "publications and information." The plaintiff has not alleged, however, that the other action taken by the defendants caused him to purchase any Union stock. Moreover, I do not believe that the plaintiff has alleged that the defendants acted with "intent to deceive, manipulate or defraud" as the recent Supreme Court decision in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), requires.

Plaintiff contends, without the citation of any new or overlooked authority, that the defendants had an obligation to state that it "would most likely take several years" to gain approval once they declared their intention to file an application within three months. There is no reason to believe that this statement would have been any more accurate than an estimate of the probable number of years necessary. I adhere to my earlier holding that a public corporation is not required to set forth information clearly in the public domain when such action might subject it to liability under Rule 10b–5.

Plaintiff's motion for leave to reargue is therefore denied in all respects.

 The plaintiff has also moved for leave to further amend the complaint. Most of the changes proposed have been considered, and dismissed, under the motion to reargue. To grant leave to amend on those grounds would therefore be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Those facts which were required in order to formulate the remaining amendments were learned, by plaintiff's own admission, during the course of discovery. Thus, to grant leave to amend on those grounds would also be futile. *Foman v. Davis, supra.*

The court therefore denies the motion for leave to amend the complaint as having been made unreasonably late. *Swan v. Board of Higher Education of the City of New York,* 319 F.2d 56, 60–61 (2d Cir. 1963).

SO ORDERED.