SALWEN PAPER COMPANY, INC., PROFIT SHARING RETIREMENT TRUST, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., David Stulberg and Roy L. Hacis, Defendants.

No. 77 Civ. 615 (CHT).

United States District Court, S. D. New York.

June 23, 1978.

Julien & Schlesinger, P. C., New York City, for plaintiff; David Jaroslawicz, New York City, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.; E. Michael Bradley, A. Robert Pietrzak, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff Salwen Paper Company, Inc., Profit Sharing Retirement Trust ("Sal-

wen") has moved herein for an order pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rules") permitting plaintiff to serve an amended complaint in this action in the form annexed to its moving papers (Exh. A). Since, as will appear hereinafter, this motion is addressed to the Court's discretion, an overview of the prior history of this litigation may prove helpful.

This action was commenced on February 8, 1977 by the filing of a complaint, which was served on defendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") on February 10, 1977. It does not appear that the co-defendant registered representatives of Merrill Lynch, *i. e.* , David Stulberg and Roy L. Haasis (incorrectly spelled "Hacis" in the complaint and proposed amended complaint), have ever been served. Without any required specification of facts, the complaint alleged, in eight purported claims and 52 paragraphs, that the defendants serviced accounts maintained by Salwen with Merrill Lynch in a negligent, fraudulent or malicious manner in that they gave improper or unsuitable advice, made misrepresentations of material facts, omitted to inform Salwen of material facts and churned Salwen's account. That conduct was alleged to constitute violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, various rules of the National Association of Securities Dealers and the New York Stock Exchange, and the common law. Compensatory damages of $500,000 were sought on each of Salwen's first seven claims and punitive damages in the same amount were sought on the eighth.

On March 3, 1977, Merrill Lynch moved to dismiss the complaint pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) for failure to allege circumstances constituting fraud with particularity, for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction of this Court over Salwen's purported common law claims. In opposing Merrill Lynch's motion, Salwen argued that its complaint was sufficient, and attached to its attorney's affidavit several confirmations of transactions which supposedly supported its claims. Salwen made no attempt to amend its complaint although it could have done so "as a matter of course" at that time under Rule 15(a) nor did it request leave to amend in its response to the motion. *See National Union of Hosp. & Health Care Employees RWDSU, AFL–CIO v. Carey,* 557 F.2d 278, 282 (2d Cir. 1976). On May 26, 1977 this Court issued a short memorandum opinion and order dismissing the complaint with prejudice and costs.

Salwen made no request for reargument. Instead, on June 8, 1977, Salwen filed a notice of appeal from this Court's order of dismissal. Prior to the filing of briefs on appeal, Salwen moved the Court of Appeals for the Second Circuit for an order remanding its action to this Court so that it could move for reconsideration of the order of dismissal. The attorney's affidavit submitted in support of Salwen's motion offered no excuse other than oversight for Salwen's failure to move for reconsideration within the ten-day requirement of Rule 9(m) of the General Rules of this Court. Upon submission, Salwen's motion for a remand was denied by the Court of Appeals in a short-form order dated August 30, 1977.

In its briefs on appeal Salwen argued that this Court erred since the complaint pleaded fraud with particularity and further erred by not "providing the plaintiff an opportunity to file an amended complaint" because plaintiff had a right to file one pursuant to Rule 15(a) and because the attorney's affidavit and exhibit (*i. e.,* several confirmations of securities transactions) filed in opposition to the motion before this Court made it clear that plaintiff had a meritorious claim. Main Brief 9, 17. Salwen stated, as it had below, that it could not provide àny further facts since "the relevant information is exclusively in defendant's possession." *Id.* at 24.

On November 18, 1977 the appeal was heard; on the same date the matter was remanded to this Court for further proceedings without prejudice to renewal of the

appeal after completion of the proceedings in this Court. Although the order does not indicate the nature of the further proceedings, this Court assumes that the court of appeals contemplated reconsideration by this Court of its order dismissing the action so that an application for leave to amend the complaint could be considered. *But see United States v. Newbury Mfg. Co.,* 123 F.2d 453 (1st Cir. 1941).

The pending motion was not served on Merrill Lynch until January 25, 1978. As already indicated, it does not seek reconsideration of the prior motion to dismiss but seeks leave to amend pursuant to Rule 15(a). Salwen contends that it has an absolute right to amend its complaint under Rule 15(a) since no responsive pleading has been filed. Plaintiff's Memorandum 1–2. Salwen has no such right. It is well established that once the order of dismissal had been entered by this Court, "the right . . to amend [the] complaint once as a matter of course was at an end." *Swan v. Board of Higher Education,* 319 F.2d 56, 60–61 (2d Cir. 1963); *Christophides v. Porco,* 289 F.Supp. 403, 408 (S.D.N.Y.1968); 3 *Moore's Federal Practice* ¶ 15.10 (2d ed. 1974). There being no right to amend, Salwen's motion is within the sound discretion of this Court, which will not be upset absent a clear showing of abuse. *Stephenson v. Landegger,* 464 F.2d 133, 135 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 520, 34 L.Ed.2d 488 (1972). Leave to amend may be properly denied, *inter alia,* because of "undue delay, bad faith or dilatory motive" on the part of the plaintiff or because of the "futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Washburn v. Madison Square Garden Corp.,* 340 F.Supp. 504, 509 (S.D.N.Y.1972); *Zucker v. Sable,* 426 F.Supp. 658, 664 (S.D.N.Y.1976). All these reasons—delay, bad faith and futility—apply to Salwen's motion.

In the first place, whatever information plaintiff seeks to add to its original complaint was certainly within plaintiff's knowledge before argument of the motion to dismiss the original complaint, and one may suspect that it appealed from the order dismissing that complaint without seeking to amend in order to see how it would make out on the original complaint. *Cf. Vine v. Beneficial Finance Co.,* 374 F.2d 627, 637 (2d Cir. 1967), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); *Christophides v. Porco, supra,* 289 F.Supp. at 408. The original complaint, the proposed amended complaint, and all supporting affidavits are signed by plaintiff's counsel, so that the claim (discussed more fully below) that certain information cannot be pleaded because it is peculiarly or exclusively within the possession of defendants has a hollow ring. One would suspect that an officer of plaintiff would maintain records in his fiduciary capacity from which an adequate complaint with respect to some if not all of the alleged claims could be prepared or that the absence of such records would be explained by an affidavit based on personal knowledge. The assertion that information is peculiarly or exclusively within the knowledge of the defendant may be, on occasion, only a request for a ticket to a fishing expedition and for relief from federal rules of pleading.

Furthermore, there is simply no reason why Salwen required over two months to file this motion following remand. The delay is particularly egregious when one considers how few changes Salwen proposes to make in the amended complaint, despite the instruction the plaintiff must have received from this Court's prior decision. In substance, all Salwen does is (1) list the same securities in the body of the complaint which it had previously attached to an attorney's affidavit, (2) add several allegations on information and belief and (3) assert that it paid defendants $10,000 in commissions. As held in *Billy Baxter, Inc. v. Coca-Cola Co.,* 47 F.R.D. 345, 346 (S.D.N.Y. 1969), *aff'd,* 431 F.2d 183, 189 (2d Cir. 1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971), the plaintiff has the burden of establishing good faith by "at least [a] prima facie showing of a possibility of the amender's ability to establish factual support" for its claims. Clearly, Salwen has made no such good faith showing.

Finally, and most basically, the proposed amended complaint is no more successful in its attempts to state valid claims than was the original complaint previously dismissed by this Court. Indeed, the proposed amended complaint is a mere restatement of the original complaint embellished with additional conclusory allegations and a few factual allegations (incorporated for the most part by reference to substantially the same confirmation slips submitted by way of exhibits on the prior motion) which are meaningless in the context in which they appear. The only portions of the original complaint omitted from the proposed amended complaint are the allegations that Salwen suffered actual damages of $500,000 with respect to each of the first seven claims for relief and the eighth claim seeking punitive damages in the same amount. The proposed amended complaint now calls for an award of damages in an indeterminate amount.

In view of the remand, the Court will deal with the proposed amended claims with more specificity and elaboration that it did in its short memorandum opinion dismissing the original complaint. As in the original complaint, the first and second claims in the proposed amended complaint are brought pursuant to rule 10b–5 and are alternatively based on allegations of violations of "Rules 405 and 408 of the New York Stock Exchange, Sections 2, 15 and 27 of the NASD Rules of Fair Practice, and other applicable statutes, rules and regulations." Proposed Amended Complaint ¶¶ 19, 29. These claims are virtually identical to those dismissed with a few nonmaterial changes.[1]

It has been conclusively established that private claims under rule 10b–5 must meet the pleading requirements applicable to fraud actions. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir. 1971). Thus, for a claim under rule 10b–5

to survive a motion to dismiss, a complaint must not only allege " 'scienter'—intent to deceive, manipulate, or defraud," *Hochfelder, supra,* 425 U.S. at 193, 96 S.Ct. at 1381, but must also meet the requirement of Rule 9(b) that "the circumstances constituting fraud . . . be stated with particularity," *Segal v. Gordon,* 467 F.2d 602, 606–08 (2d Cir. 1972), and the further requirement that specific allegations of fact showing fraud or deceit shall be made rather than mere conclusions. *Denny v. Barber,* 576 F.2d 465 at 470 (2d Cir. 1978); *Jones v. Equitable Life Assurance Soc.,* 409 F.Supp. 370, 375 (S.D.N.Y.1975).

Paragraph 15(a) of the first claim of the proposed amended complaint reiterates the conclusory allegation of churning which this Court specifically found insufficient (*i. e.,* ¶ 12 of the prior complaint) and then alleges the following:

> b) That during the period the defendants were handling the plaintiff's account, they generated nearly $10,-000.00 in commissions and mark-up charges for the plaintiff.
>
> c) That on various dated [sic], including October 27, 1972, June, 1972 and January, 1972, the defendants engaged in unnecessary transactions in disposing of numerous securities in the plaintiff's account and substituting other securities of the same nature for no apparent reason other than to generate commissions.

16. That on the same date, April 13, 1972, the defendants both bought and sold 1000 shares of United Banks of Colorado, a stock in which the defendants made an over-the-counter market.

17. That the defendants committed other acts indicating a turn-over in the plaintiff's account for no apparent reason except to generate commissions.

These additional allegations add nothing substantive to Salwen's original complaint.

---

1. A comparative analysis of the proposed amended complaint and the original complaint, with material additions to the original complaint underlined and parallel paragraphs indicated, is attached as Exhibit A to the Bradley Affidavit.

While it is also alleged that commencing in 1970 and continuing into 1975 Salwen turned over funds to defendants and that during 1970 alone it turned over in excess of $100,000.00 to defendants, nowhere is there any allegation of the total size or investment makeup of Salwen, or (with one exception) of the particular sales and purchases which constituted the churning, or of the dates of these transactions. The particular securities involved in the "unnecessary transactions" alleged in paragraph 15(c) of the proposed amended complaint are not identified, and in only one case is a particular date specified. The allegation in paragraph 16 that defendants both bought and sold 1,000 shares of United Banks of Colorado on the same day is demonstrated to be false by the confirmation slips annexed as an exhibit to an affidavit submitted by plaintiff's attorney on the earlier motion to dismiss. Affidavit of David Jaroslawicz, sworn to March 14, 1977, Exh. A ("Jaroslawicz Affidavit"); see Affidavit of E. Michael Bradley, sworn to February 6, 1978, ¶ 10 & Exh. B ("Bradley Affidavit").

Even if we incorporate by reference into the proposed amended first claim the list of securities alleged in the proposed amended second claim, see Proposed Amended Complaint ¶ 23 & Exh. A, we find that during the year 1972 nine securities were purchased and only one security (not one of those purchased) was sold. The purchases totalled $139,478.40; the sale was for $22,-066.20. Total commissions on the $161,-544.60 in transactions totalled $2,109.70. Furthermore, if we include three sales, also in 1972, reflected in the confirmation slips attached to the plaintiff's attorney's affidavit, Jaroslawicz Affidavit Exh. A, we find that in 1972 there were nine purchases totalling $139,478.40 and four sales totalling $84,007.70, for which defendant Merrill Lynch received commissions totalling $2,918.20. These purchases and sales occurred during the period commencing on January 3, 1972 and concluding on October 19, 1972. One purchase was made in each of six months—January, March, April, May, July and October—and three purchases were made in February. The only sales were made in February and May, with two sales in each month.

To characterize the foregoing as "churning," even had it been adequately pleaded, is sheer fantasy. *Carroll v. Bear, Stearns & Co.,* 416 F.Supp. 998, 1000–01 (S.D.N.Y. 1976); *see Rolf v. Blyth Eastman Dillon & Co.,* 424 F.Supp. 1021, 1039 (S.D.N.Y.1977). Salwen's allegations are even less particularized than those in *Carroll* since here, unlike *Carroll,* there is no direct identification of the securities involved and no statement of facts permitting a determination of the turnover ratio or the percentage of the account value paid in commissions. Needless to say there are no allegations as to churning in any year other than 1972. Moreover, in both the original complaint and in the proposed amended complaint Salwen has failed to particularize the circumstances involved and thereby has made it impossible to determine which individual defendants are charged with which acts. This failure in itself would warrant dismissal. *Weinberger v. Kendrick,* 432 F.Supp. 316, 322 (S.D.N.Y.1977). Finally, Salwen's repetition of its original allegation that the churning was "with the intention of defrauding the plaintiff" (the only instance where fraud is mentioned in this claim) adds nothing.

█ The second claim of the proposed amended complaint alleges that in suggesting and buying over-the-counter securities for Salwen's account, the defendants failed to disclose (a) that Merrill Lynch made a market in those securities and (b) that the defendants "received a substantial amount of additional compensation" when they purchased or sold such securities. Proposed Amended Complaint ¶¶ 24–25. The second claim is identical to the one previously dismissed except that Salwen (1) now lists ten securities in paragraph 23 of the proposed amended complaint (these are the same as those reflected in the confirmation slips attached to the attorney's affidavit on the prior motion, Jaroslawicz Affidavit Exh. A), (2) adds one new allegation on information and belief, Proposed Amended Complaint ¶ 26, and (3) downgrades an allegation pre-

viously made on knowledge to one made on information and belief. *Id.* ¶ 24.

Paragraph 23 of the proposed amended complaint listing the ten securities must be read in conjunction with paragraph 22 (copied from paragraph 17 of the original complaint), which merely alleges "[t]hat a large proportion percentage-wise of the securities purchased by the defendants for the plaintiff were securities in which the defendant Merrill Lynch was a market maker." Paragraph 23 proceeds to list ten securities by name only and incorporates some of the confirmation slips previously appended to the attorney's affidavit, as was discussed above. No allegation is made with respect to these named securities that Salwen was unaware that Merrill Lynch was a market maker for these securities. Indeed, no such allegation could be made since every confirmation slip bears the notation "WE MAKE OTC MARKET." Instead, paragraph 24 of the proposed amended complaint alleges (this time upon information and belief) that there are additional transactions, the nature of which is not disclosed, where Merrill Lynch's market-making status was not disclosed.[2] As with its original complaint, Salwen is merely using this action to attempt to find a claim rather than to state one. Such tactics are impermissible. *Segal v. Gordon, supra,* 467 F.2d at 607; *Rich v.* *Touche, Ross & Co.,* 68 F.R.D. 243, 247 (S.D.N.Y.1975).

■ With respect to the allegations of failure to disclose additional compensation, the proposed amended complaint adds to the original complaint an allegation (again upon information and belief) that "the individual defendants received at least 1½ times their ordinary compensation" on transactions in over-the-counter securities in which Merrill Lynch made a market. Proposed Amended Complaint ¶ 26. Allegations on information and belief do not, however, satisfy the requirements of Rule 9(b). *Segal v. Gordon, supra,* 467 F.2d at 608; *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). Even where facts are peculiarly within the knowledge of the defendant, a plaintiff must accompany its allegations on information and belief with "a statement of the *facts* on which the belief is [based]." *Segal, supra,* 467 F.2d at 608 (emphasis added); *Rich, supra,* 68 F.R.D. at 246. No such statement is made in the proposed amended complaint.[3]

■ In addition to the rule 10b–5 basis for Salwen's first and second claims of the proposed amended complaint, these claims are alternatively based on allegations of violations of "Rules 405 and 408 of the New York Stock Exchange, Sections 2, 15 and 27

---

**2.** It seems clear that failure to disclose a market-making role by a stock brokerage firm to a client-purchaser can be a violation of rule 10b–5. *Simon v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 482 F.2d 880, 885 (5th Cir. 1973); *Chasins v. Smith, Barney & Co.,* 438 F.2d 1167, 1170–72 (2d Cir. 1970).

**3.** It is clear from the prior statements of Salwen in this action that its allegations of additional compensation are not based on any facts Salwen actually has but rather on unproven allegations in another action involving Merrill Lynch. In its Brief on Appeal, p. 26, Salwen stated:

> Merrill Lynch and its counsel were fully aware of what the plaintiff's claim with regard to it failing to reveal its market making status and higher commission was, since Merrill Lynch, represented by the same counsel representing it in this action had litigated and lost a motion on this very issue only recently before Judge Brieant in *In Re Scien-*

*tific Control Corp. Securities Litigation,* 71 F.R.D. 491, 508 (S.D.N.Y.1976).

In that action it was alleged that, in 1968 and 1969, Merrill Lynch's account executives received an average of 1½ times their normal compensation on customer transactions in over-the-counter securities in which Merrill Lynch made a market. Merrill Lynch denied those allegations and no decision on their merits has ever been made by any court. There would appear to be some evidence to support the allegation as to production credits in 1968 and 1969. *In re Scientific Control Corporation Securities Litigation,* 71 F.R.D. 491, 509 n.19 (S.D.N.Y.1976). In the instant case the proposed amended complaint contains no allegation as to any specific transactions in such securities except in 1972. Furthermore, there is no allegation in the proposed amended complaint that account executives received additional compensation on OTC transactions involving plaintiff.

of the NASD Rules of Fair Practice, and other applicable statutes, rules and regulations." Proposed Amended Complaint ¶¶ 19 & 29. However, these claims of violations of NYSE and NASD rules and regulations similarly fail to specify the events complained of. A federal private right of action based on violations of such rules will be implied only when there are well-pleaded allegations of fraudulent conduct on the part of defendants. *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Carroll v. Bear, Stearns & Co., supra*, 416 F.Supp. at 1002; *Schonholtz v. American Stock Exchange, Inc.*, 376 F.Supp. 1089, 1092 (S.D.N.Y.), *aff'd per curiam*, 505 F.2d 699 (2d Cir. 1974).

■ The fifth claim of the proposed amended complaint, charging defendants with "violation of the Rules of Fair Practice of the NASD, the rules of the New York Stock Exchange, in particular, Rule 405, and the rules of the American Stock Exchange," Proposed Amended Complaint ¶ 44, is similarly deficient since it merely adds to the allegations of the original complaint a list of securities allegedly recommended to Salwen by the defendants. *Id.* ¶ 46. There is no allegation, however, that those securities were ever purchased by Salwen in reliance on the purported recommendations or that the defendants acted with "scienter," both essential elements of a claim of violation of an exchange rule. *See Schonholtz v. American Stock Exchange, Inc., supra*, 376 F.Supp. at 1091–92. Furthermore, there is no statement of the facts which made the securities "unsuitable" or any of the circumstances surrounding the alleged recommendations by the defendants.

■ Finally the proposed amended complaint repeats, with little or no alteration, the common law claims of the original complaint based on negligence (third and seventh claims), breach of contract (fourth claim) and common law fraud (sixth claim). It is well settled that if federal claims are subject to dismissal under Rule 12(b), then the allegedly "pendent" common law claims

should also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1179–80 (2d Cir. 1974). This is particularly true in a "garden-variety customer-broker suit." *Carroll v. Bear, Stearns & Co., supra*, 416 F.Supp. at 1002. Since the proposed amended complaint does not state a federal claim for relief, there is no federal jurisdiction for the third, fourth, sixth and seventh claims.

Accordingly, the plaintiff's motion for leave to file an amended complaint is denied.

So ordered.