216 So.2d 240 (1968)
GORDON FINANCE, INC., a Florida Corporation, Gordon Matusofsky Independent Finance Corporation, a Florida Corporation, and Leon Hoffman, Appellants,
v.
Juan Ernesto BELZAGUY and Jorge Luis Montadas, Appellees.
No. 68-438.
District Court of Appeal of Florida. Third District.
December 3, 1968.
Rehearing Denied December 18, 1968.
*241 Pallot, Silver, Pallot, Stern & Proby, Miami, for appellants.
Harris J. Buchbinder, Miami Beach, for appellees.
Before PEARSON, BARKDULL and SWANN, JJ.
PEARSON, Judge.
This interlocutory appeal is brought by the defendants in the trial court. It seeks reversal of an order which, among other things, denied their motion to dismiss the appellees' complaint, the key portions of which are:
"1. This action is filed pursuant to Rules of Civil Procedure 1.220, as being an action involving a question of common and general interest to many persons constituting a class so numerous as to make it impractical to bring them all before this Court.
"2. The individual Defendants are residents of Dade County and sui juris. The corporate defendants are Florida corporations engaged in the insurance premium finance business, with a principal place of business, with a principal place of business in Dade County, Florida.
"3. In or about February, 1968, the defendants have commenced a course of conduct designated to cause great hardship and chaos to many residents of Dade County and the State of Florida and which may result in a multiplicity of actions throughout said County and State.
"4. Defendants have and are continuing to send to insurance companies operating in the State of Florida Notice of Cancellations wherein said Notice reflects that either GORDON FINANCE, INC., or INDEPENDENT FINANCE CORPORATION have or had a premium finance agreement with the named insureds set forth in said Notice of Cancellation, and that said insureds were in default under the terms of the premium finance agreement and that by reason *242 thereof said policies should be cancelled, and any return premiums be forwarded to the defendants.
"5. That in truth and fact there did not exist any premium finance agreement between the insureds and the defendants and that therefore, the insureds were not and could not be in default as set forth in Notices of Cancellation.
"6. That unless this Court enters an Order enjoining the defendants from issuing Notice of Cancellation of policies to such insurance companies, the plaintiffs will be irreparably injured and that said plaintiffs are without an adequate remedy at law."
The appellants filed a motion to dismiss the complaint. The two grounds of that motion pertinent to this appeal are:
* * * * * *
"2. That the complaint fails to allege any act or activity by the individual defendants GORDON MATUSOFSKY and LEON HOFFMAN, but instead refers only to notice of cancellations issued by the corporate defendants, GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION."
* * * * * *
"5. That the complaint fails to allege any facts which show that the suit may be the subject matter of a class action, and should therefore be limited only to any relief which the individual plaintiffs may claim against the defendants."
Thereafter the court entered the order appealed from, which contains the following findings:

* * * * * *
"1. That there are at least four groups of individuals or corporate entities involved in the problems presented to this Court through the testimony, evidence and stipulations, to-wit:
a) That segment of the insurance buying public which have in the past, or will in the future, purchase insurance through DADE NATIONAL INSURANCE AGENCY; b) various insurance premium finance companies and banks which have financed insurance premiums on polices of insurance sold by DADE NATIONAL INSURANCE AGENCY, including the defendants GORDON FINANCE, INC., and INDEPENDENT FINANCE CORPORATION, as well as one or more banks which appear to have made unsecured loans to customers of DADE NATIONAL INSURANCE AGENCY in connection with policies of insurance being purchased by said customers; c) DADE NATIONAL INSURANCE AGENCY CORP., the owner of DADE NATIONAL INSURANCE AGENCY, and TERRA MANAGEMENT CORP.; d) and the insurance companies that have issued, or will in the future issue, policies of insurance to customers of DADE NATIONAL INSURANCE AGENCY. All of these groups will be affected by the interlocutory orders and final decision of this Court in this case, and the COURT, by the entry of this order is attempting to protect the respective rights of each of the said interested groups.
"2. That many hundreds of insurance premium finance contracts negotiated by DADE NATIONAL INSURANCE AGENCY CORP. to GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION, for value, have been questioned by the plaintiffs on the grounds that they are either forgeries or the subject of double financing by DADE NATIONAL INSURANCE AGENCY CORP. The defendants, in their petition for appointment of receiver, similarly indicate that they believe that some of the contracts negotiated to them by DADE NATIONAL INSURANCE AGENCY CORP. bear forged signatures.
"3. That the term `double financing' as used above contemplates a situation whereby a customer of DADE NATIONAL INSURANCE AGENCY CORP. would purchase a policy of insurance and simultaneously execute a premium finance contract as part of the insurance application *243 papers. Then the customer would either pay the full insurance premium in cash, or would be sent to a bank to make an unsecured loan in the amount required to pay such portion of the insurance premium as the customer did not have at the time of the transaction. DADE NATIONAL INSURANCE AGENCY CORP. would then negotiate the said insurance premium finance contract, for value, to one or more premium finance companies, including GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION. The net result of double financing is that DADE NATIONAL INSURANCE AGENCY CORP. was paid twice for the same insurance premium.
"4. That some of the customers of DADE NATIONAL INSURANCE AGENCY CORP. involved in the double financing were of Cuban extraction or birth, and were primarily literate in the Spanish language.
"5. That DADE NATIONAL INSURANCE AGENCY CORP. is clearly the principal culprit in the doublt financing transactions, and its president, managing officer and sole stockholder throughout the period of double financing transactions was MANUEL RICO, who apparently is now residing in Spain.
"6. That as a result of the double financing and/or forging of signatures by DADE NATIONAL INSURANCE AGENCY CORP., it appears that many innocent persons who purchased insurance and paid DADE NATIONAL INSURANCE AGENCY CORP. in full in cash, the exact number being unknown to the Court, have had their insurance coverage cancelled by GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION when the said premium finance contracts went into default for non-payment of the installments provided for therein.
"7. The Court is deeply concerned with possible further adverse effects on both past and future customers of DADE NATIONAL INSURANCE AGENCY.
"8. That TERRA MANAGEMENT CORP., by a transaction not yet disclosed to the Court may have succeeded to the ownership of the insurance agency business previously owned by DADE NATIONAL INSURANCE AGENCY CORP., and the said TERRA MANAGEMENT CORP. may be presently conducting the insurance agency business previously conducted by DADE NATIONAL INSURANCE AGENCY CORP., at the same address, 2020 S.W. First Street, Miami, Florida. That the Court specifically reserves jurisdiction on all issues pertaining to the transfer of assets, if any, from DADE NATIONAL INSURANCE AGENCY CORP. until subsequent hearing before this Court.
"9. That during the months preceding February, 1968, during which GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION were purchasing premium finance contracts as indicated above, DADE NATIONAL INSURANCE AGENCY CORP. would collect monthly installments payments made by its customers on account of both premium finance agreements with GORDON FINANCE, INC. and INDEPENDENT FINANCE CORP. and other premium finance companies, as well as on account of unsecured loans made by said customers at the time they purchased insurance. It was the custom and practice of DADE NATIONAL INSURANCE AGENCY CORP. to remit said payments collected to GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION, as well as to other premium finance companies and banks. The amounts so remitted by DADE NATIONAL INSURANCE AGENCY CORP. in the months preceding February, 1968 were approximately one thousand ($1,000.00) dollars per day. These payments were received by GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION by checks issued by DADE NATIONAL INSURANCE AGENCY CORP., which checks customarily indicated the premium finance account number to which said payment should be applied, and was so applied *244 by GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION. That during the months of February and March 1968 the remitted payments have been less than an average of one hundred ($100.00) dollars per day, or less than ten (10%) percent of the amounts previously received by GORDON FINANCE, INC. and INDEPENDENT FINANCE CORPORATION under the aforesaid arrangement."
The appendix to the appellees' brief contains a motion for leave to file an amended complaint. This motion was made after the entry of the order appealed from. Although no order granting the motion is included in the appendix to either brief, the appellees' appendix includes an amended complaint which more clearly describes the class the appellees claim to represent.
The appellants raise two questions in this appeal:
(1) "May two victims of similar fraudulent conduct by two separate groups of wrongdoers, pertaining to separate premium finance agreements and separate insurance policies, join together in a single class action against both separate groups of wrongdoers on behalf of themselves and all other victims of similar fraudulent conduct?"
(2) "Are corporate officers or principals individually responsible for their actions on behalf of the corporation in exercising contract rights of the corporation?"
It is apparent that the allegations of the appellees' original complaint, above, do not meet the requirements of a complaint for a class action set forth in Port Royal, Inc. v. Conboy, Fla.App. 1963, 154 So.2d 734.
"It is fundamental that an action is not a class suit merely because the plaintiff designates it as such in the complaint and uses the language of the rule. Whether it is or is not a class suit depends upon the circumstances surrounding the case. However, the complaint should allege facts showing the necessity for bringing the action as a class suit and the plaintiff's right to represent the class. The plaintiff should allege that he brings the suit on behalf of himself and others similarly situated. The complaint should allege the existence of a class, described with some degree of certainty, and that the members of the class are so numerous as to make it impracticable to bring them all before the court. It should be made clear that the plaintiff adequately represents the class, and whether a party adequately represents the persons on whose behalf he sues depends on the facts of the particular case. Generally, the interest of the plaintiff must be co-extensive with the interest of the other members of the class. A class suit is maintainable where the subject of the action presents a question of common or general interest, and where all members of the class have a similar interest in obtaining the relief sought. The common or general interest must be in the object of the action, in the result sought to be accomplished in the proceedings, or in the question involved in the action. There must be a common right of recovery based on the same essential facts." (Emphasis added.) 154 So.2d at 736, 737.
Nevertheless, we do not think that the appellants are entitled to an order dismissing the complaint upon the ground that the complaint did not meet the foregoing requirements. In moving to dismiss the complaint, the appellants urged that the appellees should be limited to "any relief which the individual plaintiffs may claim against the defendants." Because of this fact we conclude that even if the trial judge had complied with the appellants' request to place a limit upon the number of persons to whom he would consider granting relief, he would not thereby have obligated himself to dismiss the complaint. Furthermore, Rule 1.250, Florida Rules of Civil Procedure, *245 30 F.S.A., provides that misjoinder of parties shall not be a ground for dismissal of an action. If a complaint states a cause of action, it should not be dismissed merely because the plaintiff mistakenly brings it as a class action. In Dade County Medical Association v. Samartino, Fla.App. 1968, 213 So.2d 627, this court held that the trial court erred in finding that the appellee's action was a class action (and that therefore all the members of the class the appellee purported to represent were not entitled to the relief granted by the trial court); but we also held that the appellee as an individual was entitled to the relief granted by the trial court. The last reason why we hold that the trial judge's refusal to dismiss the complaint was proper is the fact that an amended complaint (also alleging that the appellees are bringing a class action) has been filed and may be tested by appropriate motions in the circuit court.
The appellants' second point is moot in view of the fact that the appellees have filed a motion to amend their complaint by adding allegations that the individual appellants were agents of the corporate appellants and were responsible for sending the notices of cancellation to various insurance companies. Whether the individual appellants are shielded from individual responsibility depends upon whether they participated in the commission of the alleged torts. See discussion in 19 Am.Jur.2d, Corporations, § 1382.
We hold that no prejudicial error has been demonstrated.
Affirmed.
BARKDULL, Judge (dissenting).
I respectfully dissent from the majority opinion.
The original complaint failed to demonstrate facts which would constitute a class action. It is apparent that the proof relating to the particular frauds would be different in each instance and, without a common factual background, it does not appear that the complaint can stand as a class action. See City of Lakeland v. Chase National Company, 159 Fla. 783, 32 So.2d 833; Osceola Groves v. Wiley, Fla. 1955, 78 So.2d 700; Peters v. Meeks, Fla. 1964, 163 So.2d 753; 24 Fla.Jur., Parties, § 19; Accord, Port Royal, Inc. v. Conboy, Fla. App. 1963, 154 So.2d 734. Although there is much in the record subsequent to the filing of the complaint and the motion to dismiss, in measuring the sufficiency of the complaint to state a cause of action only those items alleged therein are properly before the court. Rudman v. Baine, Fla.App. 1961, 133 So.2d 760; Corbett v. Eastern Air Lines, Inc., Fla.App. 1964, 166 So.2d 196; 25 Fla.Jur., Pleadings, § 127.
Therefore, I would reverse the order here under review and leave it to the discretion of the trial judge whether he would permit an amendment.