**Ernest R. ZERMAN, Plaintiff,**

v.

**Harry A. JACOBS, Jr., individually, and H. Virgil Sherrill, individually and Bache Halsey Stuart Shields Incorporated, Defendants.**

**No. 80 Civ. 3570.**

United States District Court,
S. D. New York.

March 13, 1981.

Ernest R. Zerman, pro se.

Sullivan & Cromwell, New York City, for defendants Marvin Schwartz, William P. Stimson, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action, commenced by an attorney[1] appearing pro se, arises out of the liquidation of his margin securities account which he maintained with the defendant Bache Halsey Stuart Shields Incorporated ("Bache"), a brokerage firm with its principal place of business in New York and with a branch office in Hallandale, Florida, where plaintiff resides. Plaintiff, alleging jurisdiction under § 27 of the Securities and Exchange Act of 1934,[2] charges violations of that Act and asserts pendent claims under the common law, state statutes and unspecified stock exchange rules. The individual defendants, who are the Chief Executive Officer of Bache and its President, move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint as against them for failure to

state a claim upon which relief can be granted. Bache moves to compel arbitration of plaintiff's claim against it and to stay this action pending arbitration based upon plaintiff's agreement to arbitrate all claims arising out of his brokerage account with Bache. Plaintiff resists arbitration under the doctrine of *Wilko v. Swan*[3] which bars arbitration in cases where claims are cognizable under the federal securities laws. However, for the reasons stated below, he has failed to state such a claim and such claims as he may have are the proper subject of arbitration pursuant to the agreement.

Stripped to essentials, the verbose and discursive allegations of plaintiff's pro se complaint are rather simple. Since 1977 he maintained a margin securities account with Bache at its Hallandale office. Plaintiff alleges that on March 10, 1980 he received a computerized monthly statement of his account for the previous month. The core of his case is that this was "false, fictitious, untrue and fraudulent" in that it reflected, contrary to the fact, adequate collateral in his account. Nevertheless, he was informed the next day by Bache's branch manager at Hallandale that unless he deposited over $17,000 additional margin by 3:00 p. m. on the following day, his securities account was subject to liquidation. In response to the margin call, he tendered to the branch manager United States Treasury Coupon Bonds, but this tender was improperly refused. Plaintiff further alleges that despite the branch manager's oral agreement to defer liquidation of the account until March 14, the account was liquidated on March 13. Finally, plaintiff alleges that previously, on February 14, 1980, Bache improperly refused his request to transfer a $100,000 bond to another broker and also that on March 18 Bache liquidated a $25,000 GNMA mortgage held in his account although margin requirements were then satisfied.

---

1. Admitted in the State of New Jersey.

2. 15 U.S.C. § 78aa.

3. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

■ Although plaintiff has peppered his complaint with terms such as "fraudulent," "deceit," "misrepresentation," "intent," "deceptive," and "knowingly," these mere conclusory charges of fraud without any supporting factual allegations, no matter how frequently repeated, do not state a claim under the anti-fraud provisions of the federal securities laws.[4] Scrutiny of plaintiff's complaint not only does not disclose a factual predicate for allegations of material misstatements or deception but also demonstrates that plaintiff has failed to allege that any misstatements, if they actually occurred, caused his injury.

Plaintiff places great weight on the error in the computerized monthly statement, an error admitted as "inadvertent" in defendants' answer. Although plaintiff devotes several paragraphs of his complaint to this statement and alleges that it was "willfully" and "knowingly" falsified, he does not put forth a shred of factual support for that allegation. Moreover, even if he did, he has not alleged—and on the facts set forth in the complaint could not allege—that the incorrect statement was a material element and substantial factor in bringing about his harm.[5] He alleges that, within a day after he received the incorrect statement, he received notification that, rather than having over $5,000 available margin, his account was actually undercollateralized by more than $17,000. Plaintiff does not allege how the error or the misstatement, as he refers to it, even assuming it were willful, caused his injury. It is evident that the margin call itself was not issued on the basis of the misinformation in the statement (which showed his account met margin requirements); rather, it was issued on the basis of the true state of his account. Plaintiff's

real injury, if any, was the liquidation of his account because of inadequate margin.[6] In effect, plaintiff, seizing upon a mere computer error, is attempting to convert it into a claim of fraud under the federal securities laws.

■ Any claim he might have based upon refusal to accept the tendered securities to satisfy requirements or to honor the alleged oral agreement to defer liquidation sound in breach of contract, not federal securities law. As the Second Circuit has observed in a case factually similar to the instant one:

Thus plaintiff's claim is nothing more than a garden-variety customer's suit against a broker for breach of contract, which cannot be bootstrapped into an alleged violation of § 10(b) of the Exchange Act, or Rule 10b–5, in the absence of allegation of facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence, *SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 867–868 (2d Cir. 1968); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1290–1291 (2d Cir. 1969), breach of contract or breach of a stock exchange rule, *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).[7]

In that case, the defendant broker demanded $19,000 additional security in plaintiff's margin account as a result of a decline in the value of the stock held. Plaintiff requested a representative of defendant not to liquidate without giving plaintiff an opportunity to provide additional collateral. The representative allegedly agreed to the

---

**4.** *Ross v. A. H. Robins Co.*, 607·F.2d 545, 557 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971); *Darvin v. Bache Halsey Stuart Shields Inc.*, 479 F.Supp. 460, 464 (S.D. N.Y.1979).

**5.** *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 51, 97 S.Ct. 926, 954, 51 L.Ed.2d 124 (1977) (Blackmun, J., concurring in the judgment);

*Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. 485, 503 (S.D.N.Y.1977).

**6.** *Cf. Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. 485, 503 (with or without margin, "short" sales would have felt impact of rising stock prices in volatile market).

**7.** *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 445 (2d Cir. 1971).

delay and plaintiff acted in reliance, but the account was liquidated before the collateral was posted.[8]

■ Plaintiff's claims under other provisions of the securities laws similarly fail to state a claim. Thus, he has not alleged any facts supporting a claim that his account was in violation of the restrictions contained in § 7 of the Exchange Act [9] relating to the amount of credit a broker may extend to a customer.[10]

■ Further, plaintiff seeks rescission of all securities transactions engaged in by Bache to liquidate his account. However, under § 29(b) of the Exchange Act,[11] only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts.[12] There is no suggestion that the basic customer agreement plaintiff signed is not lawful.

■ Finally, plaintiff alleges violations of unspecified rules of the New York Stock Exchange; however, whether a private right of action under a rule is implied depends on the "nature of the particular rule and its place in the regulatory scheme." [13] Inasmuch as plaintiff does not base his claim on a particular rule, he does not have a right of action.[14]

In sum, plaintiff has failed to state a proper claim under any provision of the federal securities laws. Thus, he cannot avoid the arbitration provision of his agreement with Bache.[15] Bache's motion to stay these proceedings and compel arbitration is accordingly granted.

**8.** *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129, 132 n.6 (8th Cir. 1979) (violation of margin maintenance rules does not create basis of liability in broker in absence of fraud); *Carras v. Burns*, 516 F.2d 251, 260 (4th Cir. 1975) (without fraud, violation of margin maintenance rules at most is breach of contract).
Similarly, plaintiff's allegations concerning the liquidation of the mortgage and the failure to transfer the bond to Cowen & Co. state, at most, breach-of-contract claims.

**9.** 15 U.S.C. § 78g.

**10.** Even if he had, it is doubtful that he would have a private right of action. Although the Second Circuit implied a private right of action under this section in *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), the subsequent passage by Congress of § 7(f), which imposes on broker and customer joint responsibility for seeing that margin restrictions are followed, has caused the Court of Appeals openly to question the continued vitality of that holding, *Pearlstein v. Scudder & German*, 527 F.2d 1141 (2d Cir. 1975). Many courts since then have explicitly held that the rationale of the first *Pearlstein* case no longer applies and that there is no private right of action under § 7. *E. g., Utah State Univ. v. Bear, Stearns & Co.*, 549 F.2d 164, 170 (10th Cir. 1977); *Birotte v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 468 F.Supp. 1172, 1181–84 (D.N.J.1979); *Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 465 F.Supp. 1233 (S.D.N.Y.1979); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355 (S.D.N.Y.1978); *Schy v. Federal Deposit Ins. Corp.*, 465 F.Supp. 766, 775 (E.D.N.Y.1977). *Cf. McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 429 F.Supp. 359, 363–65 (N.D.Ga.1977).

**11.** 15 U.S.C. § 78cc(b).

**12.** *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F.Supp. 286, 291 (D.Conn.1979); *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. 485, 501–02 (S.D.N.Y.1977).

**13.** *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2d Cir.) (Friendly, J.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

**14.** Whether a private right of action is to be implied under an exchange rule depends in large measure on whether the rule was enacted for the particular benefit of the investor. *See, e. g., Wellman v. Dickinson*, 475 F.Supp. 783, 835–36 (S.D.N.Y.1979); *Salwen Paper Co. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 79 F.R.D. 130 (S.D.N.Y.1978) (federal private right of action implied under stock exchange rule only in conjunction with well-pleaded allegations of fraud by defendant); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355, 1360–61 (S.D.N.Y.1978); *Carroll v. Bear, Stearns & Co.*, 416 F.Supp. 998, 1002 (S.D.N.Y.1976); *Starkman . v. Seroussi*, 377 F.Supp. 518 (S.D.N.Y.1974); *Schonholtz v. American Stock Exchange*, 376 F.Supp. 1089, 1092 (S.D.N.Y.), *aff'd per curiam*, 505 F.2d 699 (2d Cir. 1974).

**15.** *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); 9 U.S.C. §§ 3, 4.

For the same reasons, the individual defendants' motion to dismiss the claims of federal securities violation is granted. As to plaintiff's other claims, based upon common law and state statutes, he has not asserted diversity jurisdiction; to the contrary, he alleges that these are based upon "pendant jurisdiction."[16] Since plaintiff's purported claims of violations of the federal securities act fail, the state claims are dismissed for want of jurisdiction.[17] And even were this Court to retain jurisdiction, those claims must be dismissed upon the merits. Under both New York and Florida law, a corporate officer cannot be held liable either in tort or contract unless he has acted for personal gain or profit and aside from the corporate interest. An officer acting in good faith within the scope of his authority is not personally liable for inducing the corporation to breach a contract unless he commits individual separate tortious acts.[18] Plaintiff has not alleged any such acts by the individual defendants.

So ordered.

---

16. Complaint ¶ 2.

17. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

18. *Press v. Marvalan Indus., Inc.*, 468 F.Supp. 1072, 1080 (S.D.N.Y.1979); *Smith v. Fidelity Mutual Life Ins. Co.*, 444 F.Supp. 594, 598–99 (S.D.N.Y.1978); *Marine Midland Bank v. John E. Russo Produce Co.*, 50 N.Y.2d 31, 427 N.Y. S.2d 961, 968–69 (1980); *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 57 (1961); *A. S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475 (1975); *DiNardo v. L & W Industrial Park of Buffalo, Inc.*, 74 A.D.2d 736, 425 N.Y.S.2d 704, 705 (4th Dep't 1980); *Turntables, Inc. v. M. B. Plastics Corp.*, 31 A.D.2d 792, 297 N.Y.S.2d 51, 53 (1st Dep't 1969); *Lager v. Su Su Fashions, Inc.*, 10 A.D.2d 823, 199 N.Y.S.2d 169, 170–71 (1st Dep't 1960); *Buckley v. 112 Central Park South, Inc.*, 285 App.Div. 331, 136 N.Y.S.2d 233 (1st Dep't 1954). Under Florida law as well, a corporate officer is not personally liable absent a showing of some individual tortious conduct. *Bush v. Belenke*, 381 So.2d 315 (Fla.App.1980); *Gulfstar, Inc. v. Advance Mortgage Corp.*, 376 So.2d 243, 245 (Fla.App.1979), *cert. denied*, 386 So.2d 633 (Fla.1980); *Bodin Apparel, Inc. v. Superior Steam Service, Inc.*, 328 So.2d 533, 535 (Fla. App.1976); *Plaza del Prado Condominium Ass'n, Inc. v. GAC Properties, Inc.*, 295 So.2d 718, 720 (Fla.App.1974); *Gordon Finance, Inc. v. Belzaguy*, 216 So.2d 240, 245 (Fla.App.1968).