**Evelyn ZERMAN, Plaintiff-Appellant,**

v.

**George BALL, Robert Fomon, and E.F. Hutton & Company, Inc., Defendants-Appellees.**

**No. 22, Docket 83–7213.**

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1983.

Decided May 15, 1984.

---

Ernest Zerman, Hallandale, Fla. (Evelyn Zerman, pro se, Hallandale, Fla., on the brief), for plaintiff-appellant.

Jay L. Himes, New York City (Snow, Becker, Kroll, Klaris & Krauss, P.C., New York City, on the brief), for defendants-appellees.

Before MANSFIELD, KEARSE and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Evelyn Zerman appeals from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., *Judge*, granting defendants' motion for partial summary judgment dismissing two counts of the complaint and for dismissal of the entire complaint pursuant to Fed.R.Civ.P. 12(b)(6). Zerman alleged that statements and omissions of defendants George Ball, Robert Fomon, and E.F. Hutton & Co. ("Hutton") violated §§ 7, 10, 15, 20, and 29 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78g, 78j, 78o, 78t, 78cc (1982), and Rules 10b–5 ("Rule 10b–5") and 10b–16 promulgated thereunder, 17 C.F.R. §§ 240.10b–5, 240.10b–16 (1983); §§ 12(2) and 17 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77*l* (2), 77q (1982); New York Stock Exchange ("NYSE") Rules 401 and 405; National Association of Securities Dealers ("NASD") Rules of Fair Practice, Article III, § 2 (the "Suitability Rule"); [1]

---

1. Hutton is a registered broker-dealer and a member of NYSE and NASD.

and various provisions of Florida law.[2] For the reasons below, we affirm the judgment in large part; but since we conclude that as to one of the alleged misrepresentations the complaint stated a claim upon which relief might be granted against Hutton under § 10(b) of the 1934 Act and Rule 10b–5, we vacate the judgment of dismissal as to that claim and remand for further proceedings.

## I. BACKGROUND

### A. *The Complaint*

Zerman's complaint alleged that on July 1, 1980, she purchased two securities from Hutton at its Pompano Beach, Florida office. One was a $100,000 Government National Mortgage Association ("GNMA") certificate purchased at a price of $104,000 on margin; the other was $10,000 worth of Miami Convention Center bonds (the "Bonds"), for which Zerman paid the full price of $10,000 in cash. Zerman sold the Bonds on February 25, 1981, for $8300; she sold the GNMA certificate on June 22, 1981, for $79,208.05.

On July 12, 1982, Zerman commenced the present action against Ball, as Hutton's former Chief Executive Officer; Fomon, as Hutton's Acting President and Chairman; and Hutton. She alleged that her purchases had been preceded by various false representations and omissions by the defendants, made knowingly and for the purpose of inducing her purchases, and that she had relied on them. Her complaint indicated that the person she dealt with was one Norman Dinerman, a Hutton vice president in the Pompano Beach office, who has not been made a defendant to this action. She alleged that the liability of Ball and Fomon to her arose by virtue of the actions of persons associated with them whom Ball and Fomon failed to supervise.

Zerman's nine-count complaint set forth eight alleged misrepresentations or omissions, as follows:

(a) Dinerman failed to discuss or "consider [Zerman's] financial needs";

(b) Defendants falsely represented " 'that the "Municipal" Securities market was up all day and up at 3:30 P.M. and had been up all the previous week' ";

(c) Hutton advertised that "When E.F. Hutton Talks, People Listen," thereby assuring that any statement made to her by Dinerman was reliable;

(d) Defendants failed to apprise Zerman of the nature of a margin account and of the prospect that she might be called upon to provide more funds if the market fell;

(e) Defendants assured Zerman that GNMAs could be sold before maturity, but did not tell her that any such sale would be at market price;

(f) Defendants failed to advise Zerman that so long as her securities were held on margin, title would be held in Hutton's name;

(g) Defendants urged Zerman to purchase the Bonds by telling her that there were only a few left and that they were a "marvelous" investment;

(h) Defendants told her that there was no question as to the legality of the Bonds "when the city of Miami was QUESTIONING THE DEAL ON THE BONDS."

Zerman alleged that these statements and omissions violated §§ 7, 10, 15, 20, and 29 of the 1934 Act and Rules 10b–5 and 10b–16 promulgated thereunder (Count I); §§ 12(2) and 17 of the 1933 Act (Count II); § 7 of the 1934 Act and Rule 10b–16 (Count III); NYSE Rule 405 (Count IV); NYSE Rule 401 (Count V); the NASD Suitability Rule (Count VI); the Florida counterpart to Rule 10b–5, Fla.Stat.Ann. § 517.301 (Count VII); Florida's usury law, *id.* § 687.01 (Count VIII); and defendants' common law fiduciary duties (Count IX). She requested actual damages in an unspecified total amount, plus consequential and punitive damages, interest, and costs.

---

**2.** The complaint invokes both federal question jurisdiction, 28 U.S.C. § 1331 (1982), and diversity jurisdiction, *id.* § 1332.

### B. *Proceedings in the District Court*

Defendants moved pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief might be granted, and pursuant to Rule 56 for summary judgment dismissing Count II (the 1933 Act claim) and Count VIII (the Florida usury claim). With respect to Count II's claim of a violation of § 12(2) of the 1933 Act, defendants argued that GNMAs and the Bonds were exempt securities within the meaning of the 1933 Act and that, in any event, the § 12(2) claim had not been asserted within the applicable one-year statute of limitations. With respect to Count VIII, defendants submitted a copy of the margin agreement signed by Zerman in which she agreed, *inter alia,* that the permissible rate of interest would be that allowed by New York law. Defendants moved to dismiss Zerman's remaining claims principally on the grounds (1) that she had failed to plead the elements of fraud with the degree of specificity required by Fed.R.Civ.P. 9(b); (2) that she had failed to allege sufficient facts to state a claim against Ball and Fomon; and (3) that there is no implied right of action for violation of stock exchange rules or NASD rules, or for violation of Rule 10b–16, promulgated under the 1934 Act.

By memorandum endorsement on November 9, 1982, the district court granted the motion, noting that it had received no papers in opposition. On November 10, 1982, Zerman filed her papers in opposition to defendants' motion. With respect to the usury count, Zerman asserted that she had not really agreed to the margin contract but had simply signed the document, without knowing its terms, because Dinerman told her to sign. By memorandum dated November 15, 1982, the district court stated that it had read Zerman's opposition papers and that it adhered to its original ruling.

This appeal followed.

---

**3.** Although in her brief on appeal Zerman also claims a private right of action under §§ 6(b) and 11(d) of the 1934 Act, these claims were not raised in the district court and may not be asserted on appeal. *See Fortunato v. Ford Motor Co.,* 464 F.2d 962, 967 (2d Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972).

## II. DISCUSSION

■ On appeal Zerman contends essentially that her pleading was sufficient under Fed.R.Civ.P. 9(b), that questions of fact existed that should have prevented the entry of summary judgment against her, and that an implied private right of action exists under each of the statutes, rules, or regulations she has invoked.[3] We conclude (a) that summary judgment was properly granted with respect to Count VIII and so much of Count II as invoked § 12(2) of the 1933 Act, (b) that Zerman has stated a claim against Hutton under § 10(b) of the 1934 Act and Rule 10b–5 with respect to one of the alleged misrepresentations, and (c) that the remaining claims were properly dismissed for failure to state a claim upon which relief may be granted under any of the authorities invoked.

### A. *Summary Judgment on § 12(2) (Count II) and Count VIII*

■ The granting of summary judgment dismissing Count VIII and the § 12(2) claim in Count II was plainly proper. Count VIII alleged that the rate of interest charged by Hutton in connection with the margin account violated Florida's usury laws. Defendants submitted to the court the Hutton margin agreement signed by Zerman, which specified that the laws of New York governed the agreement and that Zerman expressly waived her right to challenge an interest rate, lawful under New York law, as usurious under the laws of any other state. Zerman's belated assertions that she was duped into signing the agreement and that she signed it only because she was told to do so by Dinerman were conclusory and insufficient either to raise an issue of fact as to her assent or to suggest that she should be relieved of the agreement.

■ Further, we see no basis in law for not honoring the parties' choice of New York law. In deciding a question of state law, the federal court must apply the forum state's choice-of-law rules to determine

which state's law governs. *Mehra v. Bentz*, 529 F.2d 1137, 1138 (2d Cir.1975), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract, *CBS, Inc. v. Tucker*, 412 F.Supp. 1222, 1226 n. 5 (S.D.N.Y.1976), and that designation is determinative if the state selected has sufficient contacts with the transaction, *Hawes Office Systems, Inc. v. Wang Laboratories, Inc.*, 537 F.Supp. 939, 942 (E.D.N.Y. 1982). The present transaction had a reasonable relationship to New York, where Hutton had its headquarters and where the margin loan was payable. By signing the agreement, Zerman assented to the choice-of-law provision and received notice that the effective interest rate might be higher than that permitted by Florida law. As Zerman does not contend that the interest she was charged exceeded the maximum 25% rate then allowed by New York law, *see* N.Y.Gen.Oblig.Law § 5–525 (McKinney 1978), her usury claim was properly dismissed.

■ The court also properly granted summary judgment as to so much of Count II as contended that defendants had violated § 12(2) of the 1933 Act. Section 13 of that Act, 15 U.S.C. § 77m, provides that "[n]o action shall be maintained to enforce any liability created under ... [§ 12(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." The record below reveals indisputably that Zerman must have been aware, while she held her GNMA certificate, of the fluctuation of interest rates and the nature of a margin account. Attachments to the complaint reveal that during that period Zerman received notices of various rates of interest charged on the balance outstanding on her margin account, and she has conceded that she responded to several margin calls. Zerman sold the Bonds in February 1981 and the GNMA certificate in June 1981. She did not commence this action until July 12, 1982, more than one year after she must have discovered the facts of which she complains. Her § 12(2) claim, therefore, was properly dismissed as time-barred.

Insofar as Count II also asserted that defendants had violated § 17 of the 1933 Act, defendants appear (1) to have based their summary judgment motion on the proposition that no private right of action exists for a violation of that section, and (2) to have moved for dismissal pursuant to Rule 12(b)(6) for failure to state a claim. In light of our discussion in Part II.B.2., *infra*, we conclude that if a private right of action exists, Zerman's pleading states a claim upon which relief may be granted against Hutton under this section. However, in light of our remand for further proceedings, we need not decide at this stage whether there is such a right of action.

### B. *Dismissal of the Remaining Claims under Rule 12(b)(6)*

With the exception of the claim that defendants represented to Zerman that the market was up on the day she made her purchases and that it had been up during all of the preceding week, Zerman's claimed misrepresentations and omissions are insufficient to state a claim for relief under any of the authorities she invokes. Discussion of most of these claims, summarized as items (a) and (c)–(h) in Part I.A. above, need not detain us long.

#### 1. *The deficient claims of fraudulent statements and omissions*

■ The assertion that the defendants did not "consider [Zerman's] financial needs" (item (a)) is insufficient as a matter of law to state a claim under the securities laws. It reflects neither a statement of nor a failure to state any material fact. Nor does the complaint set forth any facts from which one could conclude that Dinerman or any of the defendants had a fiduciary relationship with Zerman such as to impose on them a duty to "consider [her] financial needs."

■ Two of Zerman's other claims likewise assert the making of statements that simply are not actionable. Hutton's

advertising slogan, that "When E.F. Hutton Talks, People Listen" (item (c)), and the alleged characterization of the Bonds as "marvelous" (item (g)), do not constitute representations of fact that could be actionable under the securities laws. *See, e.g., Darvin v. Bache Halsey Stuart Shields, Inc.,* 479 F.Supp. 460, 462–64 (S.D.N.Y. 1979) (plaintiff would be "crazy" not to sell his stock); *Rotstein v. Reynolds & Co.,* 359 F.Supp. 109, 113 (N.D.Ill.1973) (the stock was "red hot" and plaintiff "could not lose" by investing in it); *Bowman v. Hartig,* 334 F.Supp. 1323, 1328 (S.D.N.Y.1971). Further, although Zerman asserts that the defendants fraudulently represented that there was no question of the legality of the Bonds (item (h)), she does not allege that there was in fact a question as to their legality. Her assertion rather is that "THE DEAL" was questioned; and indeed the newspaper clipping Zerman attached to her complaint supported the view that there was an economic question. In the absence, however, of any definite statement that the legality of the Bonds had been called into question, Zerman's item (h) is an insufficient basis for a claim.

■ At least two of Zerman's assertions of misrepresentations are insufficient because the complaint shows no injury flowing from them. The claims that Zerman was told that only a few Bonds were left (item (g)) and that defendants did not inform Zerman that title to the GNMA certificate purchased on margin would remain with Hutton as long as it was on margin (item (f)), even if provable, would not be grounds for imposing liability on the defendants since there is no indication that they caused injury. We note in passing, with respect to the latter claim, that the margin agreement signed by Zerman disclosed the information she now contends was fraudulently concealed.

■ Finally, Zerman's assertions that defendants did not disclose to her that in connection with a margin account she might be required to put up more money if the market went down (item (d)), and that they did not tell her that if she sold the GNMA certificate before maturity she would have to sell it at market price (item (e)) will not support claims against the defendants. Bypassing the fact that the nature of a margin account was revealed in the margin agreement signed by Zerman, it is clear that the information Zerman claims was withheld from her was so basic that any investor could be expected to know it. "It is not a violation of any securities law to fail to disclose a result that is obvious even to a person with only an elementary understanding of the stock market." *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1220 (9th Cir.1980); *accord Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.,* 606 F.2d 602, 611 (5th Cir.1979) ("The allegation would not ... state a claim for which relief might be granted if it contended only that the defendants failed to reveal the obvious or the well-known."). It is difficult to believe that Zerman in particular was unfamiliar with the way margin accounts work, given that just days before she made her purchases her husband (who orally argued the present appeal for her) had filed suit against another brokerage firm over the liquidation of his margin account for failure to meet a margin call. *See Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y.), *aff'd mem.,* 672 F.2d 901 (2d Cir.1981).[4] Indeed, it is perhaps significant that despite its assertions of fraud and reliance, nowhere does the complaint state that Zerman did not know these basic facts.

In sum, even construing this *pro se* complaint liberally, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), we conclude that insofar as the complaint was based on items (a) and (c)–(h), it was properly dismissed pursuant to Rule 12(b)(6).

**4.** This case is one of at least four actions brought by one or the other of the Zermans alleging fraud against different brokerage firms. In addition to *Jacobs,* Mr. Zerman has filed another action in the Southern District of New York against Cowen & Company and certain of its employees, *Zerman v. Cowen,* 82 Civ. 1231, again alleging securities fraud. In addition to the instant case, Mrs. Zerman has brought an action against Dean Witter Reynolds, Inc. and several employees, *Zerman v. Melton,* No. 83–7441, now pending before a different panel of

2. *The representation that the market was up*

 We have greater difficulty with the dismissal under Rule 12(b)(6) of Zerman's claim, described in item (b) in Part I.A. above, that she was told just prior to purchasing her GNMA certificate that the market for "municipal" securities was up and had been up all the prior week. We conclude that in paragraphs 30–35 of her complaint Zerman has stated a claim cognizable under § 10(b) and Rule 10b–5 with respect to the GNMA certificate.[5] The alleged representation is one of fact, not puff or opinion; the facts were not of the basic sort every purchaser would be expected to know; the complaint alleges that the statements were false and made with scienter, knowingly intended to induce Zerman to purchase the securities; and it asserts that she would not have made these purchases had she known the truth, *i.e.*, that the market had been down during the entire period in question. Defendants dispute the materiality of these alleged misrepresentations, but since Zerman contends that she would not have made a large purchase on margin had she known she was entering a falling market, the materiality of the alleged misrepresentations is a question of fact.[6] Read liberally, the complaint appears to assert that the statements were made to Zerman by Dinerman, the Hutton vice president with whom Zerman dealt. We conclude that these allegations are made with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), at least with respect to Hutton.

 We conclude, however, that the complaint fails to state any claim against the individual defendants. Fed.R.Civ.P. 9(b), which requires the plaintiff to plead "the circumstances constituting fraud … with particularity," and which is applicable to a complaint that alleges securities fraud, *e.g.*, *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 113 (2d Cir.1982); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), requires such a complaint to identify "particular defendants with whom [the plaintiff] dealt directly, and from whom [he] purchased stock; … the occasions on which affirmative misstatements were allegedly made to [him]—and by whom; and … what affirmative misstatements … were directed to [him]—and how." *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774–75 (D.Colo.1964); *see Berger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 505 F.Supp. 192, 194 (S.D.N.Y.1981). Zerman's allegations do not meet this standard with respect to Ball and Fomon.

Although the complaint is liberally sprinkled with general statements that "all defendants" acted fraudulently and knowingly and made misrepresentations and omissions to induce Zerman to buy the securities, nowhere does it assert that either of the individual defendants ever made any statement to her or had any contact with her. Indeed, the complaint clearly indicates that the statements of which Zerman complains were not made by Ball or Fomon since she attributes them to "the defendants thru controlled persons." Further, the complaint stated that Ball and Fomon had their offices in New York and asserted that their liability was premised on their failure to supervise Dinerman. In light of (1) the complaint's failure to connect the

---

this Court. *Melton* also involves allegations of fraud in sales on margin in the absence of advice appropriate to "a housewife on social security." Since the events alleged in *Melton* occurred after the events alleged in *Cowen* and *Jacobs* and after the alleged purchase of the GNMA certificate in the instant case, further doubt may be cast upon Mrs. Zerman's innocence in investment transactions and upon the motivation of these repetitive actions.

**5.** We conclude that a claim has been adequately stated with respect to the GNMA certificate not-

withstanding the fact that Zerman's allegation referred to " 'Municipal' " securities. We believe *Haines v. Kerner, supra*, requires that we not give an unduly technical reading to the term " 'Municipal,' " which would eliminate from the scope of the alleged misrepresentation securities that were issued by the federal, rather than a state or local, government.

**6.** We agree with defendants that item (b) is insufficient to state a claim with respect to the Bonds since this alleged falsehood was not material to a nonmargin purchase.

individual defendants with the statements, and (2) the entirely conclusory nature of the assertion as to their alleged failure to supervise, we conclude that Zerman's complaint with respect to Ball and Fomon failed to satisfy the requirements of Rule 9(b), and that the complaint was therefore properly dismissed as to them.

\* \* \*

In summary, we conclude that the complaint stated a claim upon which relief may be granted against Hutton under § 10(b) of the 1934 Act and Rule 10b–5 with respect to the alleged representations that the market for "municipal" securities was and had been up, and we remand for further proceedings with respect to that claim. We note that Zerman has asserted that these representations also violated Fla.Stat.Ann. § 517.301, which is the Florida counterpart of Rule 10b–5; therefore, the proceedings on remand may include the claim under § 517.301.

Further, given the similarity of the text of § 17(a) of the 1933 Act to that of Rule 10b–5, we conclude that if a private right of action exists under § 17(a), Zerman has stated a claim upon which relief may be granted against Hutton under that section as well. We decline to opine at this stage of the case, however, as to whether such a right of action exists. If, on remand, Zerman prevails on her claim of a violation of Rule 10b–5, a remedy under § 17(a) will be unnecessary to her recovery. If, on the other hand, Zerman does not prevail on her claim under the requirements of Rule 10b–5, it is unlikely, given their similarity to the requirements of § 17(a), that she could prevail under § 17(a) either. Accordingly, we express no view at this juncture as to the existence of a private right of action under § 17(a). Zerman is free to renew in the district court arguments as to the existence of such a right. We of course express no view as to the merits of Zerman's claims.

Finally, we conclude that, under any of the statutes, regulations, and rules invoked by Zerman, the complaint failed to state a claim against Ball or Fomon and, except to the extent already noted, failed to state a claim against Hutton. In the circumstanc-

es, we find it unnecessary to address the question of the existence of a private right of action under §§ 7 or 15 of the 1934 Act, Rule 10b–16 promulgated under that Act, the stock exchange rules, or the NASD rules. We have considered all of the arguments raised by Zerman and, except to the extent indicated, have found them to be without merit.

CONCLUSION

The judgment dismissing the complaint is vacated insofar as the complaint alleges that Hutton is liable for fraudulently inducing Zerman to purchase the GNMA certificate by representing to her that the market for "municipal" securities was up and had been up all the prior week. In all other respects, the judgment is affirmed.

Ball and Fomon may recover from Zerman their costs on this appeal. Zerman and Hutton are to bear their own costs.