Barry NEWMAN and Vivian
Newman, Plaintiffs,

v.

L.F. ROTHSCHILD, Unterberg, Towbin
and Arthur Levine, Defendants.

No. 86 Civ. 3328 (RWS).

United States District Court,
S.D. New York.

Dec. 12, 1986.

Richard Realmuto, New York City, for plaintiffs.

Hertzog, Calamari & Gleason, New York City, for defendants; Loretta A. Preska, of counsel.

SWEET, District Judge.

Defendants L.F. Rothschild, Unterberg, Towbin ("Rothschild") and Arthur Levine ("Levine") have moved to dismiss Counts II through V of a five count complaint filed by plaintiffs Barry and Vivian Newman (the "Newmans") pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).[1] Count I of the complaint is a churning claim, Count II a RICO claim, Count III an "unsuitability" claim based on alleged violations of the rules of the New York Stock Exchange and the National Association of Securities Dealers, Count IV is a Section 10(b) claim based on alleged misstatements and omissions in connection with the purchase of securities, and Count V is a pendent common law fraud claim.

---

1. Plaintiffs submitted matters outside the pleading in opposition to defendants' motion. The court has not considered the material, and thus this motion has not been converted to a Rule 56 motion for summary judgment.

For the reasons set forth below, the defendants' motion is granted with regard to all counts.

Rothschild and Levine have also requested that Rule 11 sanctions be imposed on the Newmans on the grounds that Count III of their complaint is not warranted by existing law. This motion is denied.

## Count II

■ Count II of the Newmans' complaint is a civil RICO action based on predicate acts of mail and wire fraud. The claim is dismissed for failure to plead these acts of fraud with the particularity required by Fed.R.Civ.P. 9(b).

Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This court has said that, " 'Circumstances' have been defined to include such matters as the time, place and contents of false representations...." *Hudson v. Larouche*, 579 F.Supp. 623, 628 (S.D.N.Y.1983). In addition, "It is particularly important to require such specificity when the fraud allegations also constitute the predicate acts underlying RICO claims, and implicate the reputation interests of defendants accused of committing racketeering offenses." *Terra Resources I v. Burgin*, Fed.Sec.L.Rep. (CCH) ¶ 92,703, at 93,434 (S.D.N.Y. Apr. 1, 1986) [Available on WESTLAW, DCTU database]. *See also Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902, 912 (E.D.N.Y.1986). The Newmans have alleged that Rothschild and Levine used the mails to effectuate a fraudulent scheme through:

"a) the mailing of monthly statements of accounts from defendants to the plaintiffs; and
b) the mailing of other documents from defendants to plaintiffs."

(Complaint ¶ 22). The clause "the mailing of these documents from defendants to plaintiffs" lacks the required specifity as to time and contents, and thus fails to meet the 9(b) requirements.

■ The other alleged group of mailings —"the mailing of monthly statements of accounts from defendants to plaintiffs"—is also deficient. Aside from the fact that the complaint fails to allege the period during which the statements were mailed, it also fails to specify their contents, and, most importantly, fails to allege any facts to indicate how these mailings furthered, or in any way contributed, to a fraudulent scheme. Rule 9(b) does not allow this, particularly in the context of a RICO predicate act.

■ The same flaw exists with regard to the Newmans' allegations of the predicate acts of wire fraud. The complaint alleges:

Defendants, for the purposes of executing the scheme to defraud plaintiffs of their property, transmitted and caused to be transmitted communications by means of wire in interstate commerce. Such interstate communications by wire included without limitation, telephone calls between defendant LEVINE and other L.F. ROTHCHILD agents and employees and each of the plaintiffs.

(Complaint ¶ 23). Again, lacking specifics of time, place, and contents, this allegation does not meet rule 9(b) requirements. *Hudson*, 579 F.Supp. at 628.

Because the Newmans have failed to plead the requisite predicate acts properly, their RICO claim is defective, and, consequently, Count II will be dismissed, with leave granted to replead. Because of this resolution with regard to Count II, it is unnecessary to decide whether the Newmans have properly pleaded the existence of an enterprise as required under the RICO statute.

## Count III

■ A showing that a party has violated the "suitability" rules of the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD") does not alone constitute a cause of action against the party. This court has held that there is no implied right of action under the rules. *See Silverstein v. Merrill Lynch, Pierce, Fenner & Smith*, 618 F.Supp. 436, 438 (S.D.N.Y.1985). Violations of NYSE and NASD rules, however, may be probitive in demonstrating a course

of conduct amounting to fraud. *Mauriber v. Shearson/American Express,* 567 F.Supp. 1231, 1238 (S.D.N.Y.1983). To the extent that Count III is based on an implied right of action under the NASD and NYSE rules, it does not state a claim upon which relief can be granted. To the extent Count III is attempting to plead a fraud, it fails to plead that plaintiffs relied on the "unsuitable" recommendations. Reliance is, of course, a crucial element of fraud under New York law. *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). Count III, therefore, is dismissed with leave granted to replead.

**Count IV**

■ Count IV of the Complaint seeks to plead a claim under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), based on a series of alleged material misstatements and omissions.

As the Second Circuit has explained: In order to state a claim for relief under section 10(b) a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, *acting with scienter,* made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused him injury.

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985) (emphasis added). Although Fed.R.Civ.P. 9(b) allows mental states to be averred generally, this complaint entirely fails to allege that defendant's misstatements or omissions were knowing, notwithstanding the Second Circuit's clear pleading checklist in *Bloor.* The Newmans maintain that paragraphs 14, 15 and 30 of the Complaint adequately allege knowledge. However, paragraphs 14 and 15 deal with allegations of scienter in relation to excessive trading and commissions, not at all in relation to alleged misstatements or omissions. Likewise, paragraph 30 deals with scienter with regard to supervising the unsuitability of

trades, again not in relation to misstatements or omissions.

■ Although the failure to plead scienter with regard to misstatements or omissions is by itself fatal to Count IV, there are other deficiencies in the claim. *Bloor* also requires that a plaintiff allege that his "reliance on defendant's actions caused him injury," 754 F.2d at 61, which the Newmans have failed to do. In the case of affirmative misrepresentations, the concept of reliance involves two separate questions: "(1) Did the plaintiff *believe* what the defendant said, and (2) was this belief the *cause* of the plaintiff's action?" *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 n. 6 (2d Cir.1981) (emphasis in original). The Newmans' complaint contains neither allegations that they believed Rothschild's statements, nor allegations that their belief was the cause of their actions.

■ Even if the Newmans had properly pled reliance on the alleged misstatements, some of them are not material as a matter of law. Courts have recognized a category of statements by brokers which are better characterized as "puffery" than as material misstatements. When a broker calls a bond "marvelous," *Zerman v. Ball,* 735 F.2d 15, 21 (2d Cir.1984), or says a stock is so "red hot" that the investor "could not lose," *Rotstein v. Reynolds & Co.,* 359 F.Supp. 109, 113 (N.D.Ill.1973) (cited with approval in *Zerman,* 735 F.2d at 21), or claims that his primary purpose is to make money for the customer, *Bowman v. Hartig,* 334 F.Supp. 1323, 1328 (S.D.N.Y.1971), the reasonable investor is presumed to understand that this is nothing more than "the common puff of a salesman," *id.,* not a material factual misstatement.

■ Several of the statements in the Newmans' complaint fall into this category. Thus, it is not actionable that Rothschild said "I'm the best in the business," that "I'll make money for you," or that the Newmans were going to "make good money on new issues."[2]

---

**2.** The Newmans also appear to have alleged that

Rothschild falsely stated that he possessed and

With regard to the omissions, some of the Newmans' allegations are likewise deficient. Among the charged omissions are: "That margin accounts contain a certain degree of risk," and "that a market decline can precipitate a margin call." It has been held that "It is not a violation of any securities law to fail to disclose a result that is obvious even to a person with only an elementary understanding of the stock market." *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1220 (9th Cir.1980), *quoted with approval in Zerman v. Ball,* 735 F.2d 15, 21 (2d Cir.1984). That a margin account—indeed virtually any investment— contains a "certain degree" of risk falls within this category of the universally known. Likewise, in *Zerman,* the plaintiff asserted that the defendant had not disclosed to her that "in connection with a margin account she might be required to put up more money if the market went down." 735 F.2d at 21. The Second Circuit held that "it is clear that the information [the plaintiff] claims was withheld from her was so basic that any investor could be expected to know it." *Id.* Thus Rothschild's alleged omission of the fact that "a market decline can precipitate a margin call" is not actionable under section 10(b).

**Count V**

In Count V of the complaint, the Newmans attempt to plead a pendent common law fraud action. The parties agree that: "Under New York law the elements of fraud are misrepresentation, knowledge of falsity, intent to deceive, reliance and injury." *Freschi v. Grand Coal Venture,* 551 F.Supp. 1220, 1230 (S.D.N.Y.1982). *See also Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *Ochs v. Woods,* 221 N.Y. 335, 338, 117 N.E. 305 (1917); *Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66 (1978). However, having conceded that

they must plead elements such as knowledge of falsity and intent to deceive, the Newmans do not point to any such allegation in their complaint. Count V is therefore dismissed.

In accordance with the foregoing, Counts II through V are hereby dismissed without prejudice and plaintiffs are granted leave to amend their complaint within twenty (20) days. Defendants' application for Rule 11 sanctions is denied.

IT IS SO ORDERED.

---

was prepared to trade on inside information. Without deciding the issue (which has not been briefed), it seems doubtful that a party can maintain a § 10(b) action on the grounds that he attempted to trade on inside information but was prevented from doing so because his tipster was a fraud.